**Theresa B. BROOKS, Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY CO., a corporation, Appellee.**

No. 1555.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 25, 1954.

Decided Nov. 30, 1954.

———◆———

Albert Ginsberg, Washington, D. C., with whom Joseph H. Schneider, Washington, D. C., was on the brief, for appellant.

Thomas S. Jackson, Washington, D. C., with whom Louis M. Denit and Richard A. Bishop, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

Congress has required that as a condition of receiving a license every real estate broker in this jurisdiction must furnish a bond, and has authorized persons injured by a broker's misconduct to bring suit against the surety on such bond. This was such a suit.

Plaintiff charged that a broker named Evans had in 1944 undertaken to invest $3,000 for her under a written agreement which recited that the investment was to yield a five per cent return and was to be repaid in monthly installments. Much later, in 1950, apparently apprehensive as to the safety of the investment, she engaged a lawyer to look into the matter and as a result obtained from Evans a promissory note for $2,380.91 which was dated back to December 10, 1947. In January 1954 she filed this suit, claiming $1,636.57 and naming as defendants Evans and his surety, United States Fidelity & Guaranty Co. Evans consented to judgment, but the surety company defended on the ground of limitations and also on the ground that the transaction between plaintiff and Evans was not one involving real estate and hence not within the purview of the statute authorizing a suit on the broker's bond.

In a written memorandum the trial judge found that though plaintiff had testified that she gave the money to Evans to invest in real estate, such was not the fact; that the 1944 writing showed no such agreement; that real estate was not involved in the 1947 note given by the broker after the intervention of plaintiff's attorney; that the attorney "knew that it was not an investment in real estate"; and accordingly, the trial judge found as a fact "that plaintiff had knowledge that there was no real estate involved in these transactions." The judge also ruled that the plaintiff had failed to carry her burden of showing that the money entrusted to Evans was for a purpose covered by the real estate brokers licensing law, and ordered judgment for the defendant surety company. It is that judgment which plaintiff asks us to reverse.

Basic to our consideration of the case is the proposition that not every transgression of a real estate broker authorizes an injured person to demand payment of the surety on the broker's bond. It seems plain enough from the governing statute that such remedy can only be invoked when the wrongful conduct relates to real estate transactions. Code 1951, § 45–1401 et seq. This court has held that the purpose of the Act is to protect the public against fraud in real estate transactions. Eberman v. Massachusetts Bonding & Ins. Co., D.C.Mun.

App., 41 A.2d 844.[1]  Here it seems clear beyond question that no real estate transaction was involved. The original contract between plaintiff and the broker, which was rather full in its text, indicated nothing more than the entrusting of $3,000 to the broker for investment. The note obtained by plaintiff's lawyer from the broker in 1950, though on a blank form which could have been used as a note secured by real estate, was plainly not so used, since the spaces provided for description of real estate and identification of a first trust were left blank. Therefore, the note created nothing more than a simple contract obligation to plaintiff. Furthermore, there was no evidence that Evans ever told plaintiff that he had invested the money in real estate by purchase, loan or otherwise. We would have no basis whatever for ruling that the trial judge incorrectly decided the fundamental question that the transaction between plaintiff and Evans did not involve real estate. Hence appellant has no standing under the statute to demand that her loss be paid by the surety.[2]

Appellant says that the surety should be held liable because the broker accepted her money "under color of office as a real estate broker." We think this argument is sufficiently answered by what we have already said. A surety is not to be held answerable for every wrong or default a real estate broker commits, or in whatever capacity he happens to act. It is well known that many brokers are also active in other fields, such as the practice of law, insurance business, general investment business, and perhaps others as well. It cannot be said that the surety that signs a real estate broker's bond shall thereby become additionally liable for wrongs perpetrated by a broker while engaged in unrelated fields of activity.

1. The dissent in that case, written by the author of this opinion, does not point to a contrary result here. There the question was as to the class of persons covered; here the question is more basic: it relates to the nature of the transaction itself.

2. See Eberman v. Massachusetts Bonding & Ins. Co., supra; Lofton v. C. B. Perk-

As a secondary argument appellant says certain inferences should have been drawn against the surety company because it did not call the broker Evans as a witness. To this there are three answers: (1) it does not appear that Evans was more peculiarly available to the surety company than to plaintiff; (2) even if that were true, the inferences to be drawn were merely permissible; and (3) if inferences were drawn, they would at most have justified, but not required, a different decision. See Northern Ins. Co. of New York v. Fischer, D.C.Mun. App., 103 A.2d 581; Krupsaw v. W. T. Cowan, Inc., D.C.Mun.App., 61 A.2d 624.

Concerning the defense of limitations, we express no opinion, since we are affirming on the substantive issue.

Affirmed.

ins Nat. Auto. Ins. Co., 7 Cal.App.2d 270, 45 P.2d 832; see also, Layne v. Malmgren, 99 Cal.App. 742, 279 P. 670; Woods v. National Surety Co., 27 Ariz. 479, 233 P. 900; Ruby v. Hardin, Ohio App., 35 N.E.2d 600. (We do not list cases cited by appellant or discuss them; they are easily distinguishable on the facts or are otherwise not controlling here.)