Don ROBINSON, Appellant,

v.

MISSOURI REAL ESTATE COMMISSION, Respondent.

No. 22274.

Kansas City Court of Appeals.

Missouri.

June 6, 1955.

Clifford H. Bailey, Kansas City, Mo., for appellant.

John M. Dalton, Atty. Gen., Paul McGhee, Asst. Atty. Gen., for respondent.

BROADDUS, Judge.

This is an appeal from the jugment of the circuit court affirming the order and decision of the Real Estate Commission revoking the license of Don Robinson as a real estate broker.

Appellant Robinson has been a licensed real estate broker for about seven years. He has an office at 3119 Troost Avenue in Kansas City, Missouri, and has approximately twelve salesmen working under him.

The case involves the construction of the Missouri Real Estate Commission Act. Section 10 of that Act, Laws of 1941, p. 428, V.A.M.S. § 339.100, provides that: "The commission * * * shall upon written complaint filed by any person, investigate the business transactions of any real estate broker or real estate salesman and shall have the power to suspend or revoke any license * *, * if the licensee is performing or attempting to perform any of the following acts or is deemed to be guilty of:" (the acts are then set out in eleven paragraphs).

On June 8, 1954, Herbert McCown filed a written complaint with the Commission against appellant doing business as the Don Mar Realty Company. Appellant was duly served with notice and appeared in person and by attorney before the Commission in Kansas City on June 18, 1954.

The facts developed at the hearing were that McCown formerly owned a house at 1909 East 39th Street in Kansas City, having purchased it through appellant Robinson. Early in 1953, McCown, through another broker sold the 39th Street property and took back from the purchaser two promissory notes secured by a second deed of trust. One of the notes was for $3,310.62, the other for $1,000. McCown wanted to go to Denver and start a business and, to raise money to do so, he took the notes and deed of trust to appellant, and asked the latter if he could sell them. Robinson said "he would try to find a buyer." This occurred about August 15, 1953. Appellant sold the notes to C. C. John, and received in payment a certified check in the amount of $2,586.37, made jointly payable to Herbert and Juanita McCown and the Don Mar Realty Company.

On August 31, 1953, appellant told McCown that he could get $1,850 for the notes, and the McCowns, relying upon appellant's statement, signed a paper authorizing the sale of the notes for that amount. The notes had been sold to Mr. John for $2,586.37 before the instrument authorizing their sale for $1,850 was signed. McCown was paid $1,850. Neither McCown nor his wife ever saw, or knew of, the check for $2,586.37 made by Mr. John payable to them and appellant jointly. Nor did either give authority to anyone to endorse their names thereon. The check was handed to one Turner, a salesman employed by appellant. Appellant told Turner to endorse the names of McCown and his wife on the check. Turner did so and returned the check to appellant.

We have stated the facts as found by the Commission. In fairness to appellant it should be said that he denied that he directed Turner to endorse the names of the McCowns on the check. As he stated it: "I brought the check back (from the bank) and put it on the desk and handed it to Mr. Turner and asked him to get the check endorsed. I said that would complete the deal, get the check endorsed and tell Mr. and Mrs. McCown that we will be ready to pay them in the morning."

The Commission announced its finding on June 30, 1954; and concluded that the misrepresentation made by appellant "to the said Herbert and Juanita McCown as

to the amount received in the sale of the aforementioned paper constitutes a substantial misrepresentation in the conduct of respondent's business in violation of Section 339.100(1),. RSMo 1949, [V.A.M.S.], and constitutes untrustworthy, improper, fraudulent, dishonest, dealings and conduct in violation of Section 339.100(7), RSMo 1949 [V.A.M.S.].

"The Commission further concludes that the aforementioned forgery constitutes untrustworthy, improper, fraudulent, dishonest dealings and conduct within the meaning of, and in violation of Section 339.100(7), RSMo 1949 [V.A.M.S.]."

Thereafter, appellant filed in the Circuit Court his petition for review. His petition was granted, a hearing held, the result of which was as we have stated, the upholding by·the Circuit Court of the Commission's order.

Did the Commission have authority to revoke appellant's license under the above facts?

Section 3 of the Real Estate Commission Act says that: "A 'real estate broker' is any person * * * who for a compensation or valuable consideration, as whole or partial vocation, sells or offers for sale, buys or offers to buy, exchanges or offers to exchange the real estate of others; or who leases or offers to lease, rents or offers to rent the real estate of others; or who loans money for others or offers to negotiate a loan secured or to be secured by a deed of trust or mortgage on real property." Laws of 1941, p. 425, V.A.M.S. § 339.010.

■ As we have stated the Commission is authorized to revoke a broker's license if he is found guilty of any of the eleven acts set out in Sect. 10, Laws of 1941, pp. 428–29. As shown above, the Commission's order was based upon a finding that appellant had violated paragraphs (1) and (7) of that Section. (1) is: "Making substantial misrepresentations or false promises in the conduct of his.business * * *." (7) is:. "Any other conduct which constitutes untrustworthy or impro per, fraudulent or dishonest dealings, or demonstrates bad faith or gross incompetence."

In the instant case, the undisputed fact is that McCown engaged appellant to *sell notes*. The employment had nothing to do with the sale or exchange of real estate; or with the leasing or renting of real estate; or with the loaning of money for others to be secured by a deed of trust or mortgage on real property. Reprehensible as appellant's conduct was, it was unconnected with his activities and duties as a real estate broker.

The question here presented is one of first impression in this State. However, it has been passed upon by the Supreme Courts of both California and Iowa. The California case is that of Schomig v. Keiser, Real Estate Com'r, 189 Cal. 596, 209 P. 550, 551. In that case the plaintiff Schomig filed a petition for certiorari against Keiser, Real Estate Commissioner, to review the latter's order revoking petitioner's license. The petition disclosed that Edward Rautenberg filed a complaint with Commissioner Keiser against Schomig showing that he was Rautenberg's agent in the collection of payments on a contract for the sale of real estate in Oakland; that the contract was made by Rautenberg with certain colored people for the purchase of the land, and subsequently they sold the lots to Miss Wall, who was making the payments to Rautenberg by means of the agency of Schomig through the Oakland Savings Bank, at the rate of $15 per month; that the bank was to transmit the money through Schomig to Rautenberg; that he had received from Schomig all that had been received by him from Miss Wall except the sum of $114; that Rautenberg complained to the bank and the bank then forced Schomig to account to him and confess that he (Schomig) had received the sum of $114. The complaint was filed against Schomig to obtain an order of the real estate commissioner revoking his license as a real estate broker or salesman under section 12 of the act establishing a real estate commissioner and authorizing him to revoke licenses for certain causes.

The court quoted a portion of Sect. 12 of the California Act authorizing the Commissioner to revoke the license of a real estate broker or salesman upon grounds similar to those in our Act. It also quoted Sect. 2 of the act defining a real estate broker and a real estate salesman. The latter section is almost identical with Sect. 3 of our Act, Laws 1941, pp. 425–426. After so doing the court said:

"It will be seen that this *does not authorize the commissioner to revoke any license of either a broker or salesman under the act, unless he is acting for a compensation, and also unless he does the acts complained of at a time when he is negotiating for the sale or purchase of real estate, or is selling or buying the same or negotiating a loan thereon or offers to lease, or rent, or places for rent, or is collecting rents from real estate, as a whole or partial vocation.* (Emphasis ours.)

"Any employment by any person or another to collect payment on an agreement which has already been negotiated, and is in all respects perfected and the terms agreed upon, does not make the party a real estate broker or real estate salesman, and any misconduct in performing such acts would not warrant the real estate commissioner in revoking the license of such person."

The opinion written by Shaw, C. J., and concurred in by the other members of the Court, annulled the order of the real estate commissioner.

The Iowa case is that of Blakeley v. Miller, Real Estate Com'r, 232 Iowa 980, 7 N.W.2d 11, 13. In that case Blakeley was the holder of a real estate broker's license. He was appointed referee in a partition suit with an express order from the court to sell the land and divide the proceeds between several owners. He so conducted himself as to cause the court to discharge him as referee without compensation. Thereupon, the real estate commissioner caused a complaint to be filed against Blakeley. A hearing was had with the result that the commissioner found Blakeley was guilty of acts in connection with his duties as referee, which acts were in violation of the Iowa Code relating to real estate brokers, and revoked Blakeley's license. Blakeley sought a review in the district court, claiming that the commissioner was acting illegally and without jurisdiction. The district court entered a decree annulling the order of the real estate commissioner and the latter appealed to the Supreme Court.

The court quotes the statute which authorized the commissioner to revoke any license " 'where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of: 1. Making any substantial misrepresentation, or * * * 10. Any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent, or dishonest dealing.' " I.C.A. § 117.34. (It is to be noted that the above grounds in the Iowa Code are almost identical with paragraphs (1) and (7) of our Section 339.100.) After quoting the statute, the court said:

"The language of the above section 'acts mentioned herein' must mean the acts of a real estate salesman or real estate broker, for which a license is required, in Section 1905.20 [I.C.A. § 117.1]. And in the performance of those duties the statute holds the salesman or broker to strict accountability under pain of revocation of his license but *nowhere in the statute do we find that his conduct outside of his actions in connection with his duties while so acting as a salesman or broker after the license has been once issued,* and six months have elapsed, *apply to the revocation of his license.* One could think of many good reasons why it would be better to have the actions outside of his conduct in acting as a real estate agent apply to his right to hold a real estate license, but this is for the legislature to say and not for the court to write into the statute. * * *

"*The acts complained of and upon which the real estate commissioner re-*

*voked the license were not connected in any way with the performance of his duties as a salesman or real estate broker."* (Emphasis ours.)

With all of the Justices concurring, the district court's judgment annulling the commissioner's order was affirmed.

We are convinced that the California and Iowa courts have correctly construed these Real Estate Broker Acts. Extensive search reveals no decision to the contrary.

■ It is a generally accepted doctrine that, where a statute authorizes the revocation of a license for causes enumerated, such license cannot be revoked upon any ground other than one of the causes specified. 33 Am.Jur. p. 382; 53 C.J.S., Licenses, § 44, p. 651.

■ And it is also a familiar rule of statutory construction that "where a law specifically designates several matters or things which shall be governed by its provisions, and then by general language undertakes to include other acts and things not specifically named, it must be so construed as to apply only to things or acts of the same general nature as those definitely set out." State ex rel. Spriggs v. Robinson, 253 Mo. 271, 287, 161 S.W. 1169, 1170, and State ex inf. McKittrick v. Wilson, 350 Mo. 486, 166 S.W.2d 499, 501, 143 A.L.R. 1465.

■ Ten of the eleven grounds set out in Sect. 10 of the Act authorizing revocation of a license relate to the conduct of the real estate business. The general language, "any other conduct which constitutes untrustworthy * * * dealings, or demonstrates bad faith or gross incompetence", appearing in clause (7) must be construed as applying to that business—not to some outside activity of a broker.

■ Let us assume that appellant also had a license to sell intoxicating liquor, and that he kept his establishment open on Sundays, sold liquor to minors and, in general, ran a disorderly place. Could it be said that respondent Board would have been justified in revoking his real estate broker's license because he had violated the liquor laws? We think not, for the simple reason that those unlawful acts had nothing to do with the *sale, exchange, rental or negotiation of loans on real estate*. And the same is true of the acts on account of which the Board undertook to revoke appellant's broker's license.

In our opinion, the following tends to support our present holding. Some of the States having real estate broker's license laws also require a broker to give bond that he will conduct himself in accordance with the provisions of the Acts. In several reported cases the broker and his surety had been sued because of admittedly gross fraud on the part of the broker. Those cases hold that the surety is not liable unless the broker's fraudulent acts arise out of some transaction falling within the statutory definition of the broker's business. In other words, the broker's trickery must occur in connection with the *sale, rental or negotiation of loans on real estate*. See Woods v. National Surety Co., 27 Ariz. 479, 233 P. 900; Layne v. Malmgren, 99 Cal.App. 742, 279 P. 670; Lofton v. C. B. Perkins Nat. Automobile Ins. Co., 7 Cal.App.2d 270, 45 P.2d 832; Ruby v. Hardin, Ohio App., 35 N.E.2d 600; Eberman v. Massachusetts Bonding & Ins. Co., D.C.Mun.App., 41 A.2d 844; Brooks v. U. S. Fidelity & Guaranty Co., D.C.Mun.App., 109 A.2d 377.

The judgment of the Circuit Court is reversed, and the cause is remanded with directions to the Circuit Court to enter a new judgment reversing the finding and judgment of the Commission.

DEW, P. J., and ROSE, S. J., concur.

CAVE, J., not participating.