**PHOENIX ASSURANCE COMPANY OF NEW YORK, a Corporation, (Plaintiff) Respondent,**

v.

**ROYALE INVESTMENT COMPANY, a Corporation, (Defendant) Appellant.**

No. 31646.

St. Louis Court of Appeals.

Missouri.

July 20, 1965.

Shifrin, Treiman, Agatstein & Schermer, Howard A. Wittner, St. Louis, for defendant-appellant.

Warren Grauel, Whalen, O'Connor, Grauel & Sarkisian, St. Louis, for plaintiff-respondent.

WOLFE, Acting Presiding Judge.

This is an action by the plaintiff, Phoenix Assurance Company of New York, to recover from Royale Investment Company the amount the "Assurance Company" paid to Roy M. Scott. The plaintiff sought recovery by right of subrogation after paying Scott $603.62 under a policy of insurance. This sum was for damages to Scott's automobile which had been stolen from a parking lot operated by the defendant Royale Investment Company. There was a judgment for the plaintiff, and the defendant prosecutes this appeal.

The facts of the matter are that the Royale Investment Company operated the Ambassador-Kingsway Hotel in the City of St. Louis. Directly to the east of the hotel it maintained a parking lot which was generally used for hotel guests. The defendant corporation also maintained another lot about 100 feet east of the one mentioned, which was used for parking of cars belonging to persons who attended various functions at the hotel.

Roy M. Scott carried a policy of comprehensive insurance with the plaintiff Phoenix Assurance Company of New York on his 1957 Buick. He came to St. Louis with his wife on September 27, 1960 in the automobile. They stopped by the main entrance of the Ambassador-Kingsway Hotel at about ten p. m. There a doorman took over the automobile and gave Scott a claim check. Scott kept the key to his car as the Buick ignition switch was made so that it could be turned and the motor started without the use of the key.

Scott and his wife retired to their room in the hotel. At about 4:30 in the morning Scott was awakened by a phone call from a police officer who told him that his car had been involved in a wreck in south St. Louis. Scott dressed at once and went to the police station from which the call originated. The police gave him a release order to get his car, which had been taken to a parking lot. There he found his car damaged in the front end, including the hood, headlights, windshield, and right front fender. The car would still operate and he drove it away. The car was later taken to Yates Oldsmobile, Inc., and it was repaired there at a cost of $545.09. Scott was obliged to rent a car for a week, as he was in St. Louis on business, and for this he paid $50.00. He also paid a towing charge of $8.53. His insurance company, Phoenix Assurance Company of New York, the plaintiff herein, paid the damages that he had thus sustained in the total sum of $603.-62.

Scott remained at the hotel until October 4. He was charged and paid one dollar for the first night of parking. The claim

check that he was given by the doorman had printed on the back of it:

"The Hotel assumes no responsibility for cars parked on this lot whether for the car or damages or contents therein.

"We do not have an attendant at all times.

"This ticket is not a receipt. It indicates our agreement concerning parking.

"All owners placing automobiles with the Hotel parking lot do so subject to the above terms and conditions."

The defendant's evidence chiefly consisted of the testimony of the bell captain of the hotel. He recalled that Scott and his wife arrived at the hotel and that he told Scott that he would park his car for him. He said that Scott kept the key, but he could operate the car without it and lock all of the doors. He said that he told Scott that he would park the car at Scott's own risk. He also said that he called Scott's attention to the "writing on the stub". He stated that he took the car, parked it on the lot, and that he closed all of the windows and locked the doors. The parking lot was lighted, but it was unattended from 1:30 a. m. to 8:00 a. m.

The first point raised by the appellant defendant is that the court erred in refusing defendant's offered instruction C. This instruction stated that the automobile was parked at the owner's own risk if the owner's attention was directed to the printed statement, set out above, on the ticket given him, and that if his attention was so directed the defendant was not liable for the damage to the car.

The respondent points out that its petition contained a general charge of negligence, and it contends that it is against public policy to permit one serving the public to exempt oneself from liability for one's own negligence. There is some support for respondent's contention in 8 Am.

Jur. (2d), paragraph 131, p. 1026, wherein it is said:

"The courts, while recognizing that an ordinary bailee may contract to exempt himself from liability for loss of or damage to the goods, occasioned by his own negligence or that of his employee, exhibit a strong tendency to hold contracts of this character, when entered into by bailees in the course of general dealing with the public to be violative of public policy and this tendency becomes more pronounced in the more recent decisions. These bailees, who are termed 'professional,' as distinguished from 'ordinary,' bailees, are those who make it their principal business to act as bailees and who deal with the public on a uniform and not an individual basis, such as owners or proprietors of parcel checkrooms, garages, parking stations, and parking lots, carriers, innkeepers, and warehousemen. The basis for denying the right of such bailees to limit their liability for their own negligence is that the public, in dealing with them, lacks practical equality of bargaining power, since it must either accede to the conditions sought to be imposed or else forego the desired service. It is said that a bailee who is performing services for which the public has a substantial need should not be permitted to use this circumstance to coerce the members of the public into contracts of this kind."

The above statement from Am.Jur. (2d) is drawn from various cases relating to bailments, some of which are Miller's Mut. Fire Ins. Ass'n. of Alton, Ill. v. Parker, 234 N.C. 20, 65 S.E.2d 341; Nagaki v. Stockfleth, 141 Neb. 676, 4 N.W.2d 766; Irish & Swartz Stores v. First National Bank of Eugene, 220 Or. 362, 349 P.2d 814; Keenan Hotel Co. v. Funk, 93 Ind.App. 677, 177 N.E. 364.

■ We are asked by the respondent to follow the foregoing pronouncements by

holding that a contract such as this on a parking lot, exempting the bailee from liability, is against public policy. However, public policy is not an unknown and variable quantity upon which a valid judgment may be based. It is to be determined by the Constitution, the laws, and the judicial decisions of the State. In re Rahn's Estate, 316 Mo. 492, 291 S.W. 120, 51 A.L.R. 877; Brawner v. Brawner, Mo.Sup., 327 S.W.2d 808.

■ We do not reach the point raised by the respondent, on the facts before us, as to what public policy is or should be on the subject of such bailments. The established rule of construction of a contract containing provisions exempting one from liability will never be implied to extend to liability for one's own negligence unless such an intention is clearly and explicitly stated. 17 C.J.S. Contracts § 262, p. 1160; Poslosky v. Firestone Tire and Rubber Company, Mo.Sup., 349 S.W.2d 847; Meyer Jewelry Co. v. Professional Building Co., Mo.App., 307 S.W.2d 517.

■ The general exculpatory clause does not meet the requirement set out above, and consequently cannot be construed to cover the negligence of the bailee. Nor is the bailee saved by the added statement, "We do not have an attendant at all times," for this does not exclude a conclusion that the defendant was negligent in leaving the entrance and exit of the lot open when the lot was not attended. The court therefore did not err in refusing the instruction offered by the defendant relating to the printed matter on the claim check.

■ As stated, the petition charges general negligence. Under the pleading the proof of damage to the automobile raised a presumption of negligence, and the burden of going forward with the evidence then shifted to the defendant. Nuell v. Forty-North Corporation, Mo.App., 358 S.W.2d 70; Bommer v. Stedelin, Mo.App., 237 S.W.2d 225.

■ The fact that the car was stolen did not absolve the defendant, for it was incumbent upon it to present evidence that it had exercised ordinary care to safeguard the automobile from theft. Nuell v. Forty-North Corporation, supra, and Halyard v. Dechelman, 29 Mo. 459.

Another point raised is that the court erred in refusing to give defendant's offered instruction "D", which limited to $200 the amount of damages which the jury might award. This was offered under the theory that the loss came under Section 419.010, RSMo 1959, V.A.M.S., which limits innkeepers' liability for certain losses to $200. The statute relates to the loss of "any money, jewelry, wearing apparel, baggage or other property of a guest." It is contended that the words "or other property" includes a guest's automobile.

■ Under the common law, innkeepers were liable for the loss of their guests' goods, and this was to protect travelers against dishonest practices of innkeepers and their servants. (43 C.J.S. Innkeepers § 13, p. 1153). In so far as statutes of this nature are in derogation of the common law, they are to be strictly construed. (43 C.J.S. Innkeepers § 17, p. 1159).

■ Under the rule or maxim of construction known as ejusdem generis, general words following the enumeration of particular classes of things will be construed as applying to things of the same general nature or class of those enumerated. Capra v. Phillips Investment Company, Mo. Sup., 302 S.W.2d 924; Robinson v. Missouri Real Estate Commission, Mo.App., 280 S.W.2d 138, 56 A.L.R.2d 566. Applying that rule to the statute in question, the words "or other property" obviously applied to things carried into the hotel by the guest. It would not include the guest's automobile. For this reason and for the further reason that the defendant under the evidence was nothing more than a bailee for hire, the statute has no application. The court did not err in refusing the offered instruction.

Another point raised is that the court erred in admitting in evidence a photo copy of a draft by which the plaintiff Assurance Company paid Scott's repair bill. It is contended that this violated the best evidence rule. This assignment of error was not presented in the motion for a new trial, and it is therefore not before us for review. 2A Missouri Digest, ▮ Appeal and Error.

The only remaining point which is not disposed of by that which we have heretofore said is that there was no evidence to support the measure of damages instruction as it related to the value of the automobile before and after the theft. We find the evidence of the cost of repairs which restored the automobile to the same condition in which it was prior to the theft sufficient to support the instruction. It should also be noted that there is no claim that the verdict is excessive.

For the foregoing reasons, we affirm the judgment of the Circuit Court.

ANDERSON, J., and L. F. COTTEY, Special Judge, concur.

RUDDY, J., not participating.