Warren WEINBERG, Plaintiff-Respondent,

v.

**WAYCO PETROLEUM COMPANY,**
Defendant-Appellant.

No. 32328.

St. Louis Court of Appeals.

Missouri.

April 19, 1966.

Armstrong, Teasdale, Kramer & Vaughan, Edwin S. Baldwin, St. Louis, for defendant-appellant.

James D. Keast, Morris Rosenthall, St. Louis, for plaintiff-respondent.

BRADY, Commissioner.

This action was originally filed in the magistrate court of the City of St. Louis where the plaintiff was awarded judgment. Upon appeal to the circuit court, a jury being waived, the plaintiff again prevailed and was awarded a judgment of $500.00. This appeal follows the trial court's action overruling defendant's timely after-trial motions. We will refer to the respondent by his designation in the trial court and to the defendant-appellant as Wayco.

There is no dispute between the parties as to the facts. Plaintiff was the holder of a "Parkard" issued by Wayco for which he paid $10.50 per month and which entitled him to park his automobile at Wayco's garage located at Euclid and Audubon in the City of St. Louis. This garage had five stories and entrance was gained by inserting the "Parkard" into a slot causing the entrance gate to open. This was a so-called "self-park garage" and there were no attendants on duty at the time plaintiff parked his automobile at about 11:30 p. m. on September 25, 1962. After securing admission to the garage with the Parkard, plaintiff parked his own car, locked it, and took the keys with him. He did not see nor speak to anyone. When he returned to his automobile in the evening of September 27th, he found it had been broken into and certain personal property stolen from it. The automobile had not been moved.

The "Parkard" states: "This card licenses the holder to park one automobile in this area at holder's risk. Lock your car. Licensor hereby declares himself not responsible for fire, theft or damage to or loss of such automobile or any article left therein. Only a license is granted hereby, and no bailment is created." Plaintiff testified that prior to this occurrence he had read this language on the card and knew what it said.

Before proceeding to decide the essential issue here presented, one other matter should be disposed of. The plaintiff's petition contained the allegation that he suffered " * * * loss and damage all as a direct and proximate result of the negligence of the defendant." While its position in this regard is not as clearly stated as we would wish, Wayco deals with this allegation as an attempt to state an alternative claim based upon a theory of negligence and has briefed and argued this case as if plaintiff had proceeded upon these alternative theories stating that its burden is to show that plaintiff could not recover under either theory. Wayco misconstrues this allegation of the petition. Plaintiff's only theory of recovery was bailment. The allegation of the petition above referred to was not an attempt to state a separate cause of action based upon negligence but was an effort to allege that Wayco was guilty of negligence in keeping the terms of the bailment which plaintiff alleged existed in this case; i. e., in not preserving the automobile and its contents intact for redelivery to the plaintiff. By alleging this negligence in general terms the plaintiff, upon proof of his loss, raised a presumption of negligence under the res ipsa loquitur doctrine and thus shifted the burden of going forward with the evidence to the alleged bailee, Wayco. Nuell v. Forty-North Corp., Mo.App., 358 S.W.2d 70, 1. c. [6, 7], p. 76. That was the purpose and effect of the allegation Wayco misconstrued. There is only one issue presented in this appeal and that is to determine whether the relationship between the parties was, as plaintiff contends, that of bailee and bailor.

■ With respect to cases involving automobiles and the contents thereof when loss occurs after the automobile is left in a parking lot, the relationship between the parties is usually one of bailment or license, and whether it is one or the other depends upon the circumstances of the particular case and especially upon the manner in which the parking lot in question is being operated and with whom control of the allegedly bailed article or articles is vested. The obligations of the parties flow from the relationship (bailment or license) once it is established. 24 Am.Jur., Garages, Parking Stations, and Liveries, § 29, p. 493, 1965 Supplement, Note 2.

■ A "bailment" in its ordinary legal sense imports the delivery of personal property by the bailor to the bailee who keeps the property in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished or that the property shall be kept until the bailor reclaims it. 8 Am.Jur.2d, Bailments, § 2, p. 906. This court has said that " * * * the term 'bailment' * * * signifies a contract resulting from the delivery of goods by bailor to bailee on condition that they be restored to the bailor, according to his directions, so soon as the purposes for which they were bailed are answered." Nuell v. Forty-North Corp., supra, 358 S.W.2d 1. c. 75, citing Samples v. Geary, Mo.App., 292 S.W. 1066, 1. c. 1067. We need not examine all the elements of bailment to determine whether or not the relationship exists in the instant case. In Suits v. Electric Park Amusement Co., 213 Mo.App. 275, 249 S.W. 656 at 1. c. 657 it was held " * * * there must be a delivery to the bailee, either actual or constructive. * * * It has been held that such a full delivery of the property must be made to the bailee as will entitle him to exclude for the period of the bailment the possession thereof, even of the owner. * * *"

■ It is obvious from the facts in the instant case that there was no delivery to Wayco sufficient to create the relationship of bailee and bailor between the parties here involved. Cases of the nature here involved are to be distinguished from those where the parking operation is such that the attendants collect a fee and assume authority or control of the automobile by parking it and/or retaining the keys so that the car can be moved about to permit the entrance or exit of other automobiles and where the tickets that are given to the owner of the automobile are issued for the purpose of identifying the automobile for redelivery. In such instances a bailment relationship is almost invariably held to exist. See 24 Am.Jur., Garages, Parking Stations, and Liveries, 1965 Supplement, Note 1, p. 70. See also the annotation in 131 A.L.R. beginning at 1204. In the instant case Wayco never secured control or authority over the plaintiff's automobile. No agent or employee of Wayco parked it or kept the keys to it or issued any ticket whereby the automobile could be identified by comparison of a portion of the ticket left with the automobile when it was parked. The plaintiff parked his own automobile, locked it, and took the keys with him. Certainly Wayco, the alleged bailee, did not have the right under these circumstances to exclude the purposes of the owner or even of anyone else who might have had the keys. In the instant case the plaintiff never made a delivery, actual or constructive, of the automobile to Wayco under circumstances leading to the creation of a bailee-bailor relationship between them. Other jurisdictions where the factual situations present have been similar to the instant case have ruled that no bailment was created. See Porter v. Los Angeles Turf Club, Inc., 40 Cal.App.2d Supp. 840, 105 P.2d 956; Frum v. Yonkers Raceway, Inc., Just.Ct., 204 N.Y.S.2d 422. The general principle of law that is determinative in the instant case is stated in 24 Am.Jur., Garages, Parking Stations, and Liveries, § 29, 1965 Supplement, Note 2, as follows: "The defendant parking lot proprietor has

almost invariably been held not liable for loss or damage to cars left on his parking lot, where his lot is one in which attendants collect fees, merely designating the place to park, and the driver of the car usually parks his car himself, without any actual delivery to or redelivery by the proprietor of the parking lot, the car being locked or not as the driver wishes, and no tickets being ordinarily issued by the parking lot proprietor. While in one or two cases, the courts have spoken of a bailment relationship, such discussion may be considered as dicta, inasmuch as, in these cases, the liability of the parking lot proprietors was held to be determined upon special contracts existing between the said proprietors and the owners of cars left on the parking lots. Anno: 131 ALR 1204." In the instant case there is no proof of any special contract regarding the creation of a bailment relationship. In fact the only evidence of that nature is the "Parkard" which by its terms, read and understood by the plaintiff, expressly negated the creation of any such relationship.

 Of course, if Wayco was not a bailee of the plaintiff's automobile, it was not a bailee of the contents. Cases where the courts, having found a bailment of the automobile to exist, proceed to rule upon the liability of the bailee for loss of or damage to the contents may be found collected in 27 A.L.R.2d beginning at 798.

The plaintiff relies upon Phoenix Assurance Co. of New York v. Royale Investment Co., Mo.App., 393 S.W.2d 43 and Nuell v. Forty-North Corp., supra, both decisions of this court. It is true that in both cases the owner removed the keys from his automobile, but it is also true that in each of those cases the owner left his automobile in a condition so it could be driven by an attendant without the keys and actually turned the automobile over to another who was to park it for him. The authority or control over the automobile by the parking attendant was clear and uncontradicted in each of those cases in which we held a bailment relationship to exist. The de-

livery of the automobile involved in the Nuell and Phoenix cases was the "full delivery" referred to by the court in Suits v. Electric Park Amusement Co., supra. That is the factor that distinguishes those decisions from that we reach in the instant case. In the instant case there was no such delivery.

The judgment must be reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the defendant.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court with directions to enter its judgment in favor of the defendant.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.