William G. PROPP, Plaintiff-Appellant,

v.

MISSOURI REAL ESTATE COMMISSION,
Defendant-Respondent.

No. 35062.

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 18, 1973.

Ervin D. Davis, St. Charles, for plaintiff-appellant.

John C. Danforth, Atty. Gen., Daniel P. Card II, Asst. Atty. Gen., Jefferson City, for defendant-respondent.

SIMEONE, Presiding Judge.

This is an appeal by appellant, William G. Propp, from the judgment of the circuit court of St. Charles County which affirmed an order of the Missouri Real Estate Commission entered October 16, 1972 revoking the appellant's real estate broker's license.

Mr. Propp was issued a broker's license in 1962 and was licensed as president of the O'Fallon Real Estate Company, pursuant to § 339.030.[1]

In the fall of 1965, Norman G. Huling and his wife, Rita, engaged Propp and his company to sell their home located in St. Peters, Missouri. Mr. Propp in due time contacted Mr. and Mrs. Larry L. Davis who eventually decided to purchase the Huling property. On November 28, 1965 the Hulings and the Davises signed a real estate contract for the purchase of the property for $17,000.00. The contract was subject to an outstanding first deed of trust in the amount of $15,200.00. The Davises did not have the cash to pay the difference between this amount and the purchase price, so the contract provided for earnest money and cash at closing amounting to $1,000.00 and for the balance to be paid over a period of time. Mr. and Mrs. Davis signed a promissory note for $850.00 payable to O'Fallon Real Estate Co. and Mr. and Mrs. Huling to secure a second mortgage in favor of the payees. As his commission for the sale of the Huling property, Mr. Propp was paid one-half of the $1,000.00 and was to receive one-half of the monthly payments on the note signed by the Davises. The note was

signed on December 14, 1965, the same date as the closing of the real estate transaction. The principal and interest were to be paid in monthly installments of $26.64 each to Mr. Propp who in turn was to transfer one-half of the payments to the Hulings. The Davises made several monthly payments as of December, 1967, and Mr. Propp's wife who acted as his secretary and bookkeeper forwarded the amounts due the Hulings. The Davises failed to make regular monthly payments after January, 1968, but several were made which were not turned over to the Hulings.

On November 20, 1968, Mr. Huling wrote to Mr. Propp requesting the balance of the payments. And subsequently on March 3, 1969, Mr. Propp transmitted the amounts due the Hulings as of that date ($66.62) but informed them that $206.23 plus accrued interest and late charges were still due.

On December 27, 1969, the Davises made the final payment to Propp by check in the amount of $108.48. The check was endorsed and finally cashed by Propp in July, 1970, but the Hulings' share of the $206.23 was not transmitted by Propp to them.

On November 28, 1970, Huling wrote to Mr. Propp stating that if the balance due him was not settled by December 11, 1970, he would "initiate the necessary legal action to obtain satisfaction for the balance due." As of this time the balance due the Hulings had not been paid.

On January 14, 1971, the Hulings made a sworn complaint before the Real Estate Commission alleging that they had not received their regular payments, and despite the fact that the last payment by the Davises had been made on December 27, 1969, their portion of the money had not been transmitted to them. A complaint was then filed on January 20, 1972 by the Real Estate Commission before the Administrative Hearing Commission.[2] The amended

---

1. All references are to RSMo 1969, V.A. M.S., unless otherwise indicated.

2. § 161.272 provides: "The administrative hearing commission shall conduct hearings

complaint filed on May 17, 1972 alleged that Mr. and Mrs. Huling had engaged Propp to sell their property and that Propp had arranged a contract between the Hulings and the Davises, that the Hulings agreed to pay Propp a commission of $500.00 plus 50% of the $850.00 note. It was alleged that Propp would hold and collect all the payments on this note and forward to the Hulings the amounts due them, but despite repeated demands by the Hulings for their share of the moneys collected by Propp, Propp had withheld the moneys due. This petition alleged that the conduct of Propp violated § 339.100(5) and (7).[3] In due time Propp denied appropriate allegations in the complaint.

On June 6, 1972, a hearing was held before the Administrative Hearing Commissioner. Propp acknowledged that he owed the Hulings one-half of $206.23. Propp testified that he acted as the real estate broker for Mr. and Mrs. Huling in 1965 when they wanted to sell their property and that he was to receive as his commission $500.00 (one-half of the cash) and one-half of the proceeds of the note signed by the Davises. He prepared a second deed of trust and the closing took place on December 14, 1965. He admitted receiving the last payment from the Davises in December, 1969, but the check was not deposited until July 24, 1970. He did not write to the Hulings after March, 1969, nor make any payments to them after March, 1969. He admitted that he still owed the Hulings, but explained the reason for not forwarding the amount to the Hulings was that there were personal and family problems and that his former wife was his secretary and bookkeeper. He admitted that "there is no question that there is a sum due the Hulings," and that to the best of his knowledge it was one-half of $206.23. On the hearing he stated that he was "prepared to settle it now."

In due time the Hearing Commissioner rendered his findings of fact and conclusions of law. The Commissioner found that Propp and O'Fallon Real Estate Company had violated § 339.100(5) and (7) and recommended that the licenses be suspended for ninety days upon a showing that the amount is paid to the Hulings and that absent such a showing that the licenses be suspended for one year.[4]

Hearing was then held before the Missouri Real Estate Commission on September 11, 1972, to give Mr. Propp the opportunity to present any additional evidence or to give the commission evidence concerning the findings of the commissioner.

At this hearing Mr. Propp indicated that he was aware of two other complaints that had been filed against him by the Real Estate Commission. He admitted that he knew of some complaints that were filed against him with the prosecutor of St. Charles County involving insufficient fund checks on his general account, and that he

and make findings of fact and conclusions of law in those cases wherein, under the law, a license issued by any of the following agencies [Missouri Real Estate Commission] may be revoked or suspended. . . ."

3. "The commission . . . shall have the power to suspend or revoke any license obtained by false or fraudulent representation or if the licensee is performing . . . any of the following acts or is deemed to be guilty of:

\*    \*    \*    \*    \*

(5) Failing, within a reasonable time, to account for or to remit any moneys, valuable documents, or other property, coming into his possession, which belongs to others. . . .

. . .

(7) Any other conduct which constitutes untrustworthy or improper, fraudulent or dishonest dealings, or demonstrates bad faith or gross incompetence."

4. § 161.292 provides: " . . . The [administrative hearing] commission may make recommendations as to appropriate disciplinary action but any such recommendations shall not be binding upon the agency . . . . after [the Real Estate Commission] hearing, the agency may order any disciplinary measure it deems appropriate and which is authorized by law . . . ."

had earlier received a thirty day suspension by the commission in 1970.

Finally on October 16, 1972, the Real Estate Commission ordered Mr. Propp's real estate broker's license revoked.

In due time, Mr. Propp filed a petition for review of the decision of the Real Estate Commission with the Circuit Court of St. Charles County, alleging that the order of revocation was beyond the jurisdiction of the board, that the revocation was unsupported by competent and substantial evidence, as well as other contentions.

The circuit court affirmed the decision of the Board, and Mr. Propp appealed to this court.

Appellant urges that the trial court erred in affirming the order of the Real Estate Commission because it was beyond its authority and jurisdiction. In support of this, appellant argues that a real estate broker is defined by statute, § 339.010(1) as a person who for compensation or a valuable consideration sells, buys, or exchanges real estate. Appellant contends that § 339.100(5) and (7) are applicable only to those acts which are done while acting as a "real estate broker" and that the acts of appellant here in collecting the installment payments on the note payable to himself and the Hulings were not in his capacity as a real estate broker since he was not receiving any compensation or consideration therefor, the transaction of sale had been completed and he was simply a joint owner on the note and presumably, so his argument runs, was merely collecting the proceeds as an agent for the Hulings and was not therefore engaged in the activities of a broker. He contends that the statute, § 339.100 is only applicable to his conduct while acting as a "real estate broker" and when conduct is not in such capacity, the commission has no jurisdiction. He relies on Robinson v. Missouri

Real Estate Commission, 280 S.W.2d 138 (Mo.App.1955), annotated in 56 A.L.R.2d 566 (1957).

The crucial issue here is whether the conduct of Propp under the circumstances was within his capacity as a real estate broker. As stated, he argues that his actions in collecting the proceeds of the note signed by the Davises to be transmitted to the Hulings were those of a joint owner and he was receiving no compensation for such transmissions. He relies on language in Schomig v. Keiser, 189 Cal. 596, 209 P. 550, 551 (1922) quoted in Robinson, *supra* to the effect that the commission is not authorized to revoke a license unless he is acting for compensation.

In our view, the record in this case provides competent and substantial evidence [5] to support the finding of the Commission. Nor can we conclude that the Commission's decision to revoke the appellant's license was an abuse of discretion in view of the record which includes a prior suspension and other evidence.

But appellant contends that the commission has no authority or jurisdiction to revoke the license because his activities were not within his capacity as a broker, and relies on *Robinson, supra.*

In *Robinson, supra,* one McCown sold his property through a broker, not Robinson, and took back two notes secured by a second deed of trust. McCown took the notes to Robinson and asked him to sell them. Robinson sold the notes to another and received a check payable to Mr. and Mrs. McCown and Robinson's company. Robinson thereafter told McCown that he could sell the notes for a smaller amount and the McCowns, relying on this representation, authorized Robinson to sell the notes for the smaller amount. McCown never knew of the earlier check. The

5. The standard of appellate review as to agency determination of questions of fact is whether said determination is supported by substantial and competent evidence upon the whole record. § 536.140(3). Gordon v. Puritan Chemical Company, 406 S.W.2d 822, 826 (Mo.App.1966).

Kansas City Court of Appeals (Kansas City District) held that this conduct was not in connection with Robinson's activities as a real estate broker and reversed the order of the Commission and Circuit Court in holding that this conduct was in violation of § 339.100(7). The court held that the broker was engaged to sell notes. "The employment had nothing to do with the sale or exchange of real estate; or with the leasing or renting of real estate; or with the loaning of money for others to be secured by a deed of trust or mortgage on real property." 280 S.W.2d at 140. But the Court went further and stated that the broker's conduct "must occur in connection with the *sale, rental or negotiation of loans on real estate.*" 280 S.W.2d at 142.

*Robinson, supra,* and the cases cited therein are clearly distinguishable. Robinson was not engaged in representing a seller of a house, he did not receive as part of any commission proceeds of a note, part of which was to be transferred to the seller. The transaction in *Robinson* was wholly distinct and apart from any sale, exchange or negotiation of property. Here, Propp was associated with the sale of the Huling property from the beginning, he received a $500.00 cash commission and the remainder of the commission was to be paid out of the proceeds of the note signed by the Davises. Propp's subsequent action in collecting payments was agreed upon as part of the financing arrangements made before the closing. In collecting the payments on the note he was also collecting a portion of his commission for the sale of the property. He was to account to the Hulings for their share of the payments. The collection of the proceeds of the note was a part of a continuing real estate transaction, and his relationship as a broker was not completed when closing occurred. The last payment was made in December, 1969, and the portion of the money owed to the Hulings, while small perhaps in amount, was not paid as of January, 1971, when the Hulings made their complaint to the Real Estate Commission.

 *Robinson, supra,* and the decisions cited therein recognize that the conduct of a broker is subject to discipline when the acts complained of are connected with the performance of his duties as a broker. Under the circumstances of this case we believe that the conduct of the appellant was connected with his duties as a broker. Appellant was receiving one-half of the payment for himself and the fact that he was not paid any separate compensation for receiving and transmitting the money does not under the circumstances here relieve him of his duties as a broker.

Under all the circumstances, we therefore hold that a broker, in collecting payments on a real estate transaction which he had negotiated and for which he receives a commission, acts in the capacity of a broker and misconduct related thereto is governed by § 339.100.

The judgment and order of the circuit court entered December 5, 1972, is in all respects affirmed.

WEIER and KELLY, JJ., concur.