**MASSMAN CONSTRUCTION COMPANY, Plaintiff–Respondent,**

v.

**MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Defendant–Appellant.**

**No. WD 44211.**

Missouri Court of Appeals,
Western District.

June 23, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 28, 1992.

Application to Transfer Denied
Sept. 22, 1992.

John W. Koenig, Jr., District Counsel, Sikeston, Michael C. Rose, Asst. Counsel, Rich Tiemeyer, Chief Counsel, Jefferson City, for defendant-appellant.

R.W. Miller, Stephen R. Miller, Kansas City, for plaintiff-respondent.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

TURNAGE, Judge.

Massman Construction Company filed suit against the Missouri Highway and Transportation Commission for additional compensation under a contract which Massman entered into with the Commission for the substructure work on a bridge across the Missouri River near Gumbo. The court entered judgment on a jury verdict in favor of Massman in the amount of $1,922,821.28 plus prejudgment interest. On this appeal the Commission contends the court erred in granting summary judgment to Massman on the issue of liability. Reversed and remanded.

In early 1983, the Commission advertised for bids for the substructure work on the Highway 40/61 bridge across the Missouri River near Gumbo. Massman was the successful bidder at $6,948,602.58. In July, 1983, Massman began to mobilize its St. Louis and Kansas City yards for the beginning of construction. At about the same time two engineers for the Commission were at the job site and noticed a disturbance in the water near the footprint of Pier 6. The disturbance was found to be caused by a rock revetment which had been placed in the River.[1] The existence of the revetment was not shown on the plans given by the Commission to Massman and on which its bid was based.

When Massman began actual work it was found that the drilling shafts which were to be placed in the River to act as a foundation for Pier 6 could not be built without removing the revetment and the Commission authorized Massman to remove it. Massman completed its work, including the removal of the revetment, in March, 1986. In October, 1986, Massman filed a claim with the Commission for an additional payment of $2,249,993.99 representing additional costs to Massman to complete its contract because of the necessity to remove the rock revetment.

After extensive negotiations between Massman and the Commission, a settlement was reached in late 1986 by which the Commission issued Change Order 8 to the contract which provided for the payment of $314,308.39 to Massman for additional work.

In April, 1988, Massman filed this suit against the Commission by which it sought to recover the balance of its claim after the payment authorized by Change Order 8.

---

1. The revetment had been obscured for some time previously because of high water on the River.

During the course of discovery, Massman filed answers to interrogatories on January 30, 1989 admitting that it had placed rock revetments in the River under a contract with the U.S. Corps of Engineers in 1979 in the vicinity of the project site. This was the first knowledge that the Commission had that Massman had placed rock revetment in the River near the point where Pier 6 was to be located.

Massman filed a motion in limine to prevent the Commission from introducing evidence at trial that Massman had placed rock revetment in the River and also filed a motion for summary judgment on the issue of liability. Massman took the position that the Commission had admitted liability when it issued Change Order 8 and for that reason it was immaterial that Massman had placed rock in the River and there was no further issue of fact as to its liability. In suggestions filed in opposition to the motion for summary judgment, the Commission argued that Massman was not entitled to summary judgment on the issue of liability because it had admitted that it placed rock in the River near the project. The Commission pointed out that under *Ideker, Inc. v. Missouri State Highway Com'n*, 654 S.W.2d 617, 621[1] (Mo.App. 1983), Massman had the burden to prove that it had no knowledge that the representation of the absence of rock on the plans was false or incorrect.

The court overruled the motion in limine but sustained the motion for summary judgment on the issue of liability. During the trial, evidence that Massman placed the rock revetment in the River adjacent to the bridge site at Pier 6 was admitted. However, the court instructed the jury that it could find in favor of Massman if it found that Massman sustained damages as a direct result of the positive representation of the Commission that Pier 6 could be constructed without encountering a rock dike. The jury was never instructed that knowledge by Massman that it placed rock in the River near the bridge site would bar Massman's recovery.

The decisive issue raised by the Commission is that the court erred in granting summary judgment to Massman on the issue of liability. In *Ideker*, this court held that six elements must be proven to constitute a cause of action ex contractu in the nature of a breach of warranty by a contractor against a governmental entity premised on a positive representation of a material fact. This court listed the six elements as follows:

> (1) A positive representation by a governmental entity,
>
> (2) Of a material fact,
>
> (3) Which is false or incorrect,
>
> (4) Lack of knowledge by a contractor that the positive representation of the material fact is false or incorrect,
>
> (5) Reliance by a contractor on the positive representation of a material fact made by the governmental entity, and
>
> (6) Damages sustained by a contractor as a direct result of the positive representation of a material fact made by the governmental entity.

*Id.* at 621[1].

In its order sustaining the motion for summary judgment on the issue of liability the court found that Massman encountered conditions not shown in the plans and specifications given to it by the Commission in the form of a rock dike in the vicinity of Pier 6. The court found that the Commission authorized Massman to remove the rock dike, and that Massman performed the work and incurred a loss as a result. The court further found that Massman was entitled to receive additional compensation for removing the rock and that the Commission had paid $314,308.39 to Massman for some but not all of Massman's loss. The court found that Massman had reserved its right to seek payment of the unpaid portion of its claim. The court found the only issues remaining to be tried were whether the existence and the removal of the rock dike caused Massman to incur any loss over the amount of the compensation the Commission had paid and the amount of such loss, if any.

While the court did not find that the execution of Change Order 8 constituted an admission of liability on the part of the Commission, that was the position urged by

Massman and is the only logical explanation for the court's order. The Commission contends that the execution of Change Order 8 was the result of settlement negotiations and that Change Order 8 would be inadmissible under the rule that offers of settlement are not admissible in evidence as held in *J.A. Tobin Const. v. State Hwy. Com'n,* 697 S.W.2d 183, 186[3] (Mo.App. 1985). Massman contends that Change Order 8 was not the settlement of a disputed claim and that it did not show on its face that it was a settlement.

Contrary to the contentions of Massman, Change Order 8 states immediately before the space for the signature of Massman's vice-president that "terms of settlement outlined above are hereby agreed to." Further the vice-president of Massman who signed Change Order 8 wrote a transmittal letter to accompany it in which he stated: "As you are aware, the settlement of the direct costs included in the Change Order is the result of extensive negotiations...."

It is clear from the record that Change Order 8 was a settlement of a claim made by Massman for additional compensation for the removal of rock. By Change Order 8 the Commission agreed to pay what were termed the "direct costs" of rock removal. In this case Massman sought to recover the indirect costs which are referred to as "impact costs," which include such items as loss of productivity and labor escalation.

However, Change Order 8 not only constituted an offer of settlement, but was accepted by Massman and thereby became a completed compromise as to the direct cost. No Missouri case has been cited or located on the question of whether or not a completed compromise is admissible in evidence. In *Ershig Sheet Metal, Inc. v. General Ins. Co. of America,* 62 Wash.2d 402, 383 P.2d 291, 294[5] (1963), the court confronted a contention that a completed compromise, unlike an offer to compromise, is admissible in evidence as an admission of liability. The court held, "We see no reason to distinguish between an offer to compromise and a completed compromise in determining whether proffered evidence is admissible on the basis that it is an admission of liability." Also, in *McGuire v.*

*Commercial Union Insurance Co. of N.Y.,* 431 S.W.2d 347, 352[9] (Tex.1968), the court held that "a settlement agreement is not admissible as an admission against interest or otherwise because to admit such agreements would frustrate the policy favoring the settlement of lawsuits."

This court finds the reasoning in *Ershig* and *McGuire* to be persuasive. To admit completed settlement agreements as an admission of liability would frustrate the policy of the law favoring settlements just as surely as would the admission of an offer of settlement. It cannot be said that the execution of Change Order 8 was an admission of liability by the Commission.

■ In addition to arguing that the execution of Change Order 8 constitutes an admission, Massman contends that the resident engineer and district engineer for the Commission both admitted that the Commission was liable for the additional costs incurred by Massman in removing the rock. It is incredible that Massman would make this contention when the admissions by these two engineers were made in 1986 at a time when they had no knowledge that Massman had placed rock in the River near the project. It would be unconscionable to consider an admission made in ignorance of the true facts as binding on the Commission. Such admissions cannot be considered for any purpose when they were made without knowledge that Massman placed rock in the River near the bridge site. Further, Massman is in no position to urge the validity of such admissions when it concealed the fact that it placed rock in the River near where Pier 6 was to be placed. Change Order 8 was executed largely on the basis of the opinion of the two engineers which was given prior to the execution of the Change Order in late 1986. It was not until January, 1989 that Massman admitted that it placed rock near the project which gave the Commission its first notice of that fact.

Furthermore, *Ideker* places the burden on Massman to prove that it had no knowledge that the representation by the Commission in its plans that there was no rock obstruction to the construction of Pier 6 was false or incorrect. The Commission freely admits that its plans did not show

any rock obstruction in the footprint of Pier 6. However, the burden was on Massman as part of its proof to prove that it had no knowledge that the plans furnished by the Commission were incorrect when they failed to show the rock revetment at the point where Pier 6 was to be constructed. At the time it granted Massman's summary judgment on the issue of liability, the court was aware that Massman had admitted that it had actually placed rock in the River near the construction site. In view of this admission, it was apparent that there was a question of material fact in issue as to the knowledge by Massman of the existence of the rock where Pier 6 was to be placed. The existence of a question of material fact prevents the entry of summary judgment. *Maryland Cas. Co. v. Martinez*, 812 S.W.2d 876, 879[1–4] (Mo.App.1991).

█ Although evidence came in at trial that Massman had placed rock in the River near the project, such evidence lost all significance when the jury was instructed that it needed to find only that Massman sustained damage as a direct result of a positive representation by the Commission that Pier 6 could be constructed without encountering the rock dike. Such instruction was tantamount to a directed verdict in favor of Massman and completely ignored the *Ideker* requirement that Massman prove its lack of knowledge of the existence of the rock dike.

The grant of summary judgment on the question of liability allowed Massman to recover without meeting its burden to show that it had no knowledge of the existence of the rock. For that reason the judgment must be reversed.

The Commission raises other points which mostly concern evidentiary rulings during the trial. These matters may or may not recur on retrial, but if they do the parties have the benefit of the briefs.

The judgment is reversed and this cause is remanded for further proceedings.

All concur.