**Geoffrey J. SEITZ and Valerie A. Seitz Respondents,**

v.

**LEMAY BANK AND TRUST COMPANY Appellant.**

No. 79983.

Supreme Court of Missouri, En Banc.

Jan. 27, 1998.

Rehearing Denied Feb. 24, 1998.

John K. Springborn, Davis Biggs, Jr., St. Louis, for Appellant.

David M. Duree, Bernard A. Reinert, Thomas J. Burnside, St. Louis, for Respondents.

WHITE, Judge.

Geoffrey and Valerie Seitz filed suit against Lemay Bank and Trust Company for the negligent bailment of an eighteenth century Italian violin and mandolin. The instruments were located in a rented safe deposit box at Lemay Bank when they were destroyed in the flood of 1993. A jury awarded the Seitzes $315,000. Lemay Bank appealed. After opinion by the court of appeals, this Court granted transfer.[1] The judgment of the trial court is affirmed.

### Facts

The following facts are undisputed. In August 1991, the Seitzes rented a safe deposit box from Lemay Bank in Lemay, Missouri.[2] Into the box, the Seitzes placed a violin and a mandolin that an expert had traced back to 1740 Italy.

On July 8, 1993, the United States Army Corps of Engineers determined that the Keyser Creek Levee near the bank would not survive any significant further rise in the creek level. Lemay Bank's basement began to flood and the bank turned on its water pumps.

On July 9, a state of emergency was declared. Evacuation of the designated area, which included Lemay Bank, commenced. All utilities were shut down. Lemay Bank was allowed to keep a skeleton crew on site to continue operation of the departments that were still functioning with the aid of a generator. Gasoline-powered pumps continued pumping water out of the basement.

The Federal Emergency Management Agency forecast the waters to crest at forty-five feet by July 14. The ground floor of Lemay Bank's lobby sat at the equivalent of a forty-six foot water level. Water began seeping into the lobby from outside the bank.

An inch of standing water accumulated. The vault containing the safe deposit box, built in the 1920s, was located two inches above the ground floor. At some point, water also began coming up through the drains on the first floor. There was a drain directly across from the vault. A plumber was called and the drains were blocked.

On July 10, Lemay Bank relocated all bank records, movable furniture, a large mural, glass desktops, and the draperies from the ground floor. Apart from the contents of the vault, the only other items not removed were those that were "part of the building that couldn't really be dismantled and removed."

On July 11, Mr. Seitz learned that the bank was closed to the public. He went to the bank the next morning and was not allowed to enter. He went to a different branch and was told by the receptionist that the main branch was closed, but the vault had been sealed, and "everything was safe." He called or visited the bank every day thereafter, Monday through Saturday, and was repeatedly told that "everything was safe."

On July 16, Lemay Bank began to sandbag the front entrance, side entrance, and loading dock entrance. The sandbags were stacked to the equivalent of a fifty foot water level. By July 27, the water level outside the bank had risen to forty-nine feet. Lemay Bank opened the vault to find it dry. Lemay Bank brought in vault experts and resealed the vault. Mr. Seitz received a notice by mail that "SAFE DEPOSIT CONTENTS are safe and secured."

On July 30, five or six propane tanks began breaking loose from their moorings on the riverfront. Each tank contained 30,000 gallons of propane gas. At 6:30 p.m., a total evacuation was ordered. All but two employees left the bank. At 9:30 p.m., these last two bank employees were given ten to fifteen minutes to leave the premises. To minimize the risk of an explosion, they shut down the

---

1. Mo. Const. art. V, section 10; Rule 83.03.

2. The city of Lemay is located approximately 1.5 miles west of the Mississippi River, 11 miles south of the city of St. Louis, Missouri.

pumps and removed the gasoline tanks that had been fueling the pumps.

On August 11, Mr. Seitz was told that water had infiltrated his box. The Seitzes were allowed to enter the bank on August 26. They opened the box in the company of bank officials. The violin and mandolin were destroyed.

### *Delivery*

■ Lemay Bank contends that the trial court erred in overruling its motions for directed verdict and its motion for judgment notwithstanding the verdict (JNOV) because the Seitzes failed to prove that the instruments were delivered to the bank. This Court reviews the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict, disregarding evidence to the contrary.[3] This Court will reverse the jury's verdict for insufficient evidence only where there is a "complete absence of probative fact" to support the jury's conclusion.[4]

■ The term 'bailment' "signifies a contract resulting from the delivery of goods by bailor to bailee on condition that they be restored to the bailor, according to [bailor's] directions, so soon as the purposes for which they were bailed are answered."[5] Lemay Bank claims the evidence did not manifest that the bank ever had exclusive control over the box and, therefore, delivery was not proved.

■ It is well settled that when a bank lets a safe deposit box to a customer, a bailment relationship is created between the bank and the customer as to the property deposited into the box.[6] The Seitzes introduced into evidence a rental contract between themselves and Lemay Bank for a safe deposit box. The contract granted Lemay Bank the power to "bar access to the safe,

break open the safe and/or take other actions with respect to the safe or its contents if deemed necessary in the opinion of the Bank." On August 26, 1993, the Seitzes, in the company of bank officials, opened the box. The box contained the instruments. The Seitzes presented sufficient evidence for the jury to infer that delivery occurred.

### *Knowledge*

■ Lemay Bank next alleges that the trial court erred in failing to grant its motions for directed verdict and for JNOV because, "even if the plaintiffs did prove a specific condition which prevented the boxes from being 'reasonably safe,' plaintiffs failed to prove that the Bank *knew or should have known* of the condition." The condition the Seitzes set forth in their amended petition was the "floodwater in and around the location" of the safe deposit box.

The president of Lemay Bank testified, on behalf of the Seitzes, that water from outside the bank had seeped into the lobby and came within one inch of the vault on July 10. On July 27, the water level outside the bank was forty-nine feet. The vault floor sat at the equivalent of a forty-six foot, two inch water level. Lemay Bank employees were in the bank until 9:30 p.m. on July 30. The Seitzes presented sufficient evidence for the jury to infer the bank had knowledge of the floodwaters "in and around" the location of the safe deposit box.

### *"Reasonable Banker" Standard*

■ Lemay Bank also argues that the trial court erred in failing to grant its motion for directed verdict and for JNOV because the Seitzes did not offer sufficient evidence that the bank failed to act like a "reasonable banker." Lemay Bank urges this Court to apply a more stringent standard to this case

---

**3.** *See Heins Implement Co. v. Missouri Highway & Transp. Com'n,* 859 S.W.2d 681, 684 (Mo. banc 1993).

**4.** *Elliott v. St. Louis Southwestern Ry. Co.,* 487 S.W.2d 7 (Mo.1972) (quoting *Lavender v. Kurn,* 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946)).

**5.** *Weinberg v. Wayco Petroleum Co.,* 402 S.W.2d 597, 599 (Mo.App.1966).

**6.** Section 362.483.2, RSMo 1994 (A bank can incorporate as a safe deposit corporation "only for the purpose of taking and receiving as bailee for safekeeping and storage ..."); *Kramer v. Grand National Bank of St. Louis,* 336 Mo. 1022, 81 S.W.2d 961, 967 (1935).

than that submitted by the Seitzes: "that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." Lemay Bank argues that the Seitzes had the burden of producing an expert witness to offer evidence concerning the actions of a reasonable banker regarding 4,500 safe deposit boxes in the midst of a civil emergency. This Court need not review this issue as it was not included in Lemay Bank's motions for directed verdict or its motion for JNOV, the dispositions of which it now complains. Issues raised for the first time on appeal are not preserved for review.[7]

### "Roving Commission" Objection

■ The trial court offered the following instruction to the jury:

### INSTRUCTION NO. 5

Your verdict must be for plaintiffs if you believe:

First, plaintiffs delivered a J.B. Guadagnini violin and a mandolin in an undamaged condition to defendant for safekeeping and storage, and

Second, defendant failed to move or cause those instruments to be moved to a safe place, and

Third, defendant, was thereby negligent, and

Fourth, as a direct result of such negligence, plaintiffs sustained damage[,] unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 6.[8]

The term "negligent" or "negligence" as used in this instruction means failure to use ordinary care. The phrase "ordi-

nary care" means that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances.

Lemay Bank made the following objection:

I have an objection to the verdict director in both the first and second paragraphs. Plaintiffs use safekeeping,[9] and moving instruments to a safe place, I think that those are a roving commission for the jury. The other problem is that it implies that the instruments were not already in a safe place, which the evidence has shown that the bank people certainly thought it was safe at the time that we are talking about. I think we ought to have something more neutral and that doesn't give the jury a roving commission.

■ MAI does not contain a negligent bailment instruction. *Rule 70.02(b)* states that "where there is no applicable MAI so that an instruction not in MAI must be given, then ... such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." A not-in-MAI instruction, therefore, is reviewed to determine "whether the jury [could] understand the instruction and whether the instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict."[10] What the ultimate facts are in any given case is necessarily a case-by-base determination.[11] A not-in-MAI instruction approved by an appellate court in one case, therefore, would not necessarily be sufficient to submit the same cause of action on a factual situation that was more in dispute.[12]

---

7. *Artman v. State Bd. of Registration for Healing Arts,* 918 S.W.2d 247, 252 (Mo. banc 1996).

8. Instruction No. 6 stated:
   Your verdict must be for the defendant if you believe the evacuation ordered by the civil authorities on July 30 was an intervening cause of plaintiff's damages.
   An "intervening cause" as used in these instructions means a new and independent force which so interrupts the chain of events that the result is no longer the natural and probable consequence of defendant's conduct and ought not have been anticipated by the defendant.

9. Lemay Bank apparently abandons its objection to "safekeeping" on appeal as its argument refers only to "safe place."

10. *Brown v. Van Noy,* 879 S.W.2d 667, 672 (Mo. App.1994) (citations omitted).

11. *Grindstaff v. Tygett,* 655 S.W.2d 70, 73 (Mo. App.1983).

12. *See Miller v. Neill,* 867 S.W.2d 523, 526 n. 1 (Mo.App.1993).

■ The sole count the Seitzes presented to the jury was that of negligent bailment based specifically on the failure to move the instruments or allow them to be moved. In any negligence action, "the plaintiff must establish the existence of a duty on the part of the defendant to protect plaintiff from injury, failure of the defendant to perform that duty, and that plaintiff's injury was proximately caused by defendant's failure."[13]

■ The rental of a safe deposit box creates a bailment of mutual benefit to the parties.[14] Absent contrary contract terms, the duty of the bailee in such a relationship is to exercise "ordinary care in the custody, preservation, and care of the bailed property."[15] The bailee is not an insurer of property.[16] Accordingly, the duty at issue in a negligent bailment cause of action is that of ordinary care in the preservation of the bailed property.

■ A "roving commission" occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury "to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic" to impose liability.[17] Lemay Bank's objection was that Instruction No. 5 assumed a disputed fact.[18] The verdict of the jury will be reversed if the offending instruction misdirected, misled, or confused the jury.[19]

Lemay Bank argues that the language "failed to move or cause those instruments to be moved to a safe place" improperly assumed that the vault was not a "reasonably safe" place. Lemay Bank relies on *Spring v. Kansas City Area Transp. Authority.*[20] *Spring* involved an injury suffered by a bus passenger when the driver started the bus before the passenger sat down. The driver's duty was to allow the passenger a reasonable time to get to a place of safety. Whether or not the plaintiff had reached a "place of safety" before the bus started was a disputed fact in the case. This Court found reversible error because the instruction removed from the jury's consideration a disputed issue. The instruction should have hypothesized whether the plaintiff had reached a place of safety when the driver started the bus.[21]

It does not follow, as Lemay Bank suggests, that in the instant case, "failed to move or cause those instruments to be moved to a safe place" removed from the jury's consideration the condition of the vault in determining breach of duty.[22] As set out above, the ultimate issue in the case at bar was whether not moving the instruments was consistent with "ordinary care in the custody, preservation, and care" of the instruments.[23] Instructing the jury in the context of the failure to move the instruments to a "safe place" did not assume the bank breached its duty, for the bank did not have a duty to insure or

13. *Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990).

14. *Kramer v. Grand Nat'l Bank of St. Louis*, 336 Mo. 1022, 81 S.W.2d 961, 968 (1935).

15. *Id.*

16. *Broadview Leasing Co. v. Cape Central Airways, Inc.*, 539 S.W.2d 553, 564 (Mo.App.1976).

17. *Davis v. Jefferson Sav. & Loan Ass'n*, 820 S.W.2d 549, 556 (Mo.App.1991); *See Spring v. Kansas City Area Transp. Authority*, 873 S.W.2d 224, 226 (Mo. banc 1994); *Citizens Bank of Appleton City v. Schapeler*, 869 S.W.2d 120, 129 (Mo.App.1993).

18. On appeal, Lemay Bank argues for the first time that Instruction No. 5 was also a roving commission in that it failed to sufficiently submit the concept of foreseeability. Briefs on appeal cannot enlarge the assignment of error recorded

at trial. *Miller v. Gulf, M. & O.R. Co.*, 386 S.W.2d 97, 104 (Mo.1964). Our review of the roving commission objection is therefore limited to the assumption of fact argument raised by Lemay Bank's objection at trial and motion for new trial.

19. *Duncan v. First State Bank of Joplin*, 848 S.W.2d 566, 568 (Mo.App.1993).

20. 873 S.W.2d 224 (Mo. banc 1994),

21. *Id.* at 226–27.

22. Lemay Bank is not complaining about the lack of a definition for the word "safe," nor could it now do so, as it failed to offer the court an instruction containing a definition of the term. *Walsh v. St. Louis Nat'l. Baseball Club, Inc.*, 822 S.W.2d 559, 563 (Mo.App.1992).

23. *Kramer*, 81 S.W.2d at 968.

guarantee safety.[24] Safe and, to use the words of Lemay Bank, "reasonably safe" are not mutually exclusive terms. Instruction No. 5, therefore, presented the jury with the ultimate issue: whether or not the bank exercised *ordinary care* in not moving the contents of the vault to a safe place.

Notwithstanding the destruction of the instruments, Instruction No. 5 allowed the jury to find that the vault was in a condition such that not removing its contents was consistent with the exercise of ordinary care. This instruction did not preclude a finding that the bank acted as an ordinarily careful and prudent person would have acted under the same or similar circumstances. The jury also had the option under Instruction No. 5 to find for Lemay Bank if it found the evacuation was an intervening cause as defined in Instruction No. 6.[25]

We find that on this set of facts and on the theory of liability that the Seitzes presented to the jury, the instruction was not misdirecting, misleading, or confusing. This Court, therefore, affirms the judgment of the trial court.

PRICE and LIMBAUGH, JJ., concur.

COVINGTON, J., concurs in result.

ROBERTSON, J., dissents in separate opinion filed

BENTON, C.J., and HOLSTEIN, J., concur.

ROBERTSON, Judge, dissenting.

I respectfully dissent.

The majority holds that the plaintiffs made a submissible case. I agree. Because I believe the verdict director submitted to the jury substantially and prejudicially misdirected the jury's deliberations, I would reverse the trial court's judgment and remand for a new trial.

Jury instructions are the means by which courts inform the jury as to the factual elements it must find to determine liability in a civil case. Instructions are important because they channel the jury's deliberations. This channeling function assures the parties that the process by which the jury considers the evidence conforms with the requirements of the law. Unless a jury finds each of the essential factual elements that comprise a cause of action in the plaintiff's favor, the defendant prevails in a case. For this reason, "[i]t is ... error for an instruction to assume a disputed fact." *Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224, 226 (Mo. banc 1994).

Here, the plaintiff's case depended on the jury finding that the defendant bank was negligent. The jury was instructed that negligence means "that degree of care that an ordinarily careful and prudent person would use under the same or similar circumstances." MAI 11.02.

As used in Instruction No. 5, a finding of negligence is a two-step process. The jury must first find that the defendant bank accepted a duty to these plaintiffs—the promise to keep the musical instruments safe—and breached that duty—by failing to move them or cause them to be moved.

The defendant's evidence claimed that but for two unexpected and intervening events—the breaking free of the propane tanks and the subsequent demand by authorities that bank employees abandon their efforts to keep pumps running at the bank because of the danger posed by the propane tanks—the bank's plan for keeping the instruments safe in the vault would have met with the appropriate standard of care.

The problems with Instruction No. 5 are two-fold. First, the instruction assumes that moving the instruments was the only course a reasonably careful and prudent person would undertake under the circumstances known to the bank as it made its plans for dealing with the flood. The instruction thus left the jury to conclude that damage alone proved negligence since by all accounts the bank did not move the instruments.

The essence of the bailment at issue in this case is the bank's safekeeping and return of the plaintiff's property. The bank may

---

**24.** *Broadview Leasing Co.,* 539 S.W.2d at 564.

**25.** *Supra* note 8.

choose the manner by which it meets its duty to keep the instruments safe. The proper factual question facing the jury was not whether the bank moved the instruments but whether the bank breached its duty of safekeeping the plaintiffs' property. Instruction No. 5 failed to give the jury any frame of reference for determining when or whether the bank breached its duty to plaintiffs. Instruction No. 5 substantially and prejudicially misdirected the jury.

Second, Instruction No. 5 as submitted negated any impact Instruction No. 6 could have had on the jury. Instruction No. 6 stated:

> Your verdict must be for defendant if you believe the evacuation ordered by the civil authorities on July 30 was an intervening cause of plaintiff's damages.

> An "intervening cause" as used in these instructions means a new and independent force which so interrupts the chain of events that the result is no longer the natural and probable consequence of defendant's conduct and ought not have been anticipated by the defendant.

As the facts show, the bank's sandbagging and pumping efforts were successful in keeping water below the height of the vault until the danger presented by the propane tanks made it impossible to keep the pumps running. A defendant is entitled to present the jury with an instruction that hypothesizes facts that support its defense. *Spring*, 873 S.W.2d at 226. By assuming that only by moving the instruments from the vault could the bank meet the standard of care, Instruction No. 5 made any discussion of intervening cause at least irrelevant and probably confusing to the jury.

It is, of course, inappropriate to complain without providing a better solution. I believe a legally correct instruction would recognize that the standard of ordinary care permitted the bank to choose any option that would keep the instruments safe and would permit the jury to consider whether the bank's plans for keeping the instruments safe were reasonable but for the unexpected events surrounding the propane tanks. The instruction should have read:

Your verdict must be for the plaintiff if you believe:

First, that plaintiffs delivered a J.B. Guadagnini violin and a mandolin in an undamaged condition to defendant for safekeeping and storage, and

Second, defendant failed to provide a safe place for plaintiffs' instruments, and

Third, defendant was thereby negligent, and

Fourth, as a direct result of such failure, plaintiff sustained damage,

Unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 6.

This instruction far more carefully channels the jury's deliberations than the instruction actually given. It does not assume that the bank's only possible course of action was to move the instruments, but permits the jury to find that failure to move the instruments breached the standard of care.

I would reverse and remand for a new trial.