**MASSMAN CONSTRUCTION COMPANY, Respondent,**

v.

**MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION, Appellant.**

**No. WD 57228.**

Missouri Court of Appeals, Western District.

Aug. 29, 2000.

Motion For Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 2000.

Application for Transfer Denied Dec. 5, 2000.

---

6. We have reviewed the other cases relied on by claimant and find them unpersuasive.

John W. Koenig, Jr., Sideston, for appellant.

R.W. Miller, Kansas City, for respondent.

PAUL M. SPINDEN, Chief Judge.

Massman Construction Company sued the Missouri Highways and Transportation Commission for breach of warranty *ex contractu* for the substructure work it did on a bridge across the Missouri River. The circuit court entered judgment on a jury's verdict for Massman in the amount of $850,000 plus prejudgment interest. The commission appeals, asserting that the circuit court erred when it denied its motion for judgment notwithstanding the verdict because, as a matter of law, Massman could not satisfy the requirements for a breach of warranty *ex contractu* cause of action. We affirm.

In 1983, Massman entered into a contract with the commission to do substructure work for a bridge over the Missouri River on U.S. 40 and U.S. 61 near St. Charles and Chesterfield. Before Massman began construction, Massman and the commission discovered that a rock revetment, which was not shown on the commission's project plan, would interfere with the placement of one of the bridge's piers. The commission told Massman to remove it. Massman sued the commission for a breach of warranty *ex contractu* and sought damages arising from its having to remove the rock revetment from the river.

This dispute between Massman and the commission has been ongoing since 1988 and has resulted in three trials and four appeals. In the first trial, the circuit court granted summary judgment to Massman on the issue of liability only and ordered the parties to try the issue of damages only to a jury. The jury awarded Massman $1,922,821.28. The commission appealed, and this court reversed.

We ruled that, because the commission had evidence that Massman knew that the revetment was at the site before construction—Massman had put it there pursuant to a contract with the U.S. Army Corps of Engineers in 1979—the circuit court erroneously granted summary judgment. We concluded that the circuit court should have permitted the jury to hear the commission's evidence. *Massman Construction Company v. Missouri Highway and Transportation Commission,* 835 S.W.2d 465 (Mo.App.1992) (*Massman I*).

The circuit court held a second trial. That jury, after hearing the additional evidence, returned a verdict of only $250,000 for Massman. Massman asked the circuit court to increase the jury's award to $1,922,821.28, the amount of the jury verdict in the first trial. The circuit court did not increase the jury award but found that the jury's award was inadequate and ordered a new trial on damages only. The commission appealed, and the Supreme Court transferred the case to that court. The Supreme Court reversed the circuit court's order granting a new trial and remanded the case so the circuit court could enter a proper response to Massman's motion for additur. The Supreme Court said, "To overrule the motion for additur and at the same time grant a new trial when no new trial was sought was reversible error." *Massman Construction Company v. Missouri Highway and Transportation Commission,* 914 S.W.2d 801, 804 (Mo. banc 1996) (*Massman II*).

On remand, the circuit court entered an order increasing the jury verdict from $250,000 to $750,000, but it gave the commission the option of accepting the increased verdict or having a new trial on the issue of damages only. The commission again appealed to this court, and we reversed and remanded with instructions that the circuit court offer the commission the choice of accepting the $750,000 award to Massman or retrying the case on all issues. *Massman Construction Company v. Missouri Highway and Transportation*

*Commission,* 948 S.W.2d 631 (Mo.App. 1997) (*Massman III* ).

On remand, the commission chose a new trial on all issues. This trial resulted in a judgment for Massman in the amount of $850,000 plus interest, and the commission appeals this judgment. It claims that the circuit court erred when it denied its motion for judgment notwithstanding the verdict because, as a matter of law, Massman could not satisfy the requirements for a breach of warranty *ex contractu* cause of action.

■ In reviewing the circuit court's denial of the commission's motion for judgment notwithstanding the verdict, we must determine whether Massman made a submissible case. *Seitz v. Lemay Bank and Trust Company,* 959 S.W.2d 458, 461 (Mo. banc 1998). In doing so, we review the evidence and all reasonable inferences in the light most favorable to the jury's verdict and disregard contrary evidence. *Id.* "[We] will reverse the jury's verdict for insufficient evidence only where there is a 'complete absence of probative fact' to support the jury's conclusion." *Id.* (citation omitted). When reasonable minds can differ on a question put to a jury, the court may not disturb the jury's verdict. *Uptergrove v. Housing Authority of City of Lawson,* 935 S.W.2d 649, 652 (Mo.App. 1996).

■ Before a contractor can recover against a governmental entity for breach of warranty *ex contractu,* the evidence must establish that the governmental entity made a positive representation of material fact that was false and that the contractor lacked knowledge of the falsity and relied on and sustained damages as a direct result of the governmental entity's positive representation of material fact. *Ideker, Inc. v. Missouri State Highway Commission,* 654 S.W.2d 617, 621 (Mo. App.1983). The evidence established that when Massman submitted its bid to the commission for the substructure work for the bridge, the commission's plan did not indicate the presence of the rock revetment in the river. In formulating its bid, Massman relied on the commission's plan and did not account for the removal of the revetment in its bid. The commission contends, however, that as a matter of law Massman could not—and cannot—satisfy the requirement that it lacked knowledge about the rock revetment because Massman placed the rock revetment in the river.

■ Before reaching the commission's contention, we consider Massman's contention that the doctrine of the law of the case prevented the circuit court from even considering the commission's motion for judgment notwithstanding the verdict and declaring as a matter of law that Massman could not satisfy the requirements for a breach of warranty *ex contractu.* Massman contends that, because this court held in *Massman I* that a genuine issue of material fact existed as to whether Massman had knowledge that the representation in the commission's plan was false, this court necessarily concluded that it could not find, as a matter of law, that Massman had knowledge of the plan's false representation. We disagree.

■ "Unless there is a change in the issues or the evidence, the court of appeals' previous holding constitutes the law of the case and concludes any issues decided on remand and subsequent appeal." *Kansas City v. Keene Corporation,* 855 S.W.2d 360, 366 (Mo. banc 1993). In *Massman I,* this court's decision pertained to the propriety of the circuit court's granting summary judgment for Massman on the issue of liability. In deciding that the circuit court improperly granted summary judgment, we found:

> At the time [that the circuit court] granted Massman's summary judgment on the issue of liability, the court was aware that Massman had admitted that it had actually placed rock in the River near the construction site. In view of this admission, it was apparent that there was a question of material fact in

issue as to the knowledge by Massman of the existence of the rock where Pier 6 was to be placed. The existence of a question of material fact prevents the entry of summary judgment. *Maryland Cas. Co. v. Martinez,* 812 S.W.2d 876, 879[1–4] (Mo.App.1991).

Although evidence came in at trial that Massman had placed rock in the River near the project, such evidence lost all significance when the jury was instructed that it needed to find only that Massman sustained damage as a direct result of a positive representation by the Commission that Pier 6 could be constructed without encountering the rock dike. Such instruction was tantamount to a directed verdict in favor of Massman and completely ignored the *Ideker* requirement that Massman prove its lack of knowledge of the existence of the rock dike.

835 S.W.2d at 469. We did not determine or address whether, as a matter of law, Massman's knowledge prevented Massman from satisfying the requirements for a breach of warranty *ex contractu.* We reversed because the circuit court's "summary judgement on the question of liability allowed Massman to recover without meeting its burden to show that it had no knowledge of the existence of the rock." *Id.* We merely determined that Massman did not meet its burden. We never determined whether Massman was prohibited from recovering. By reversing, we, in essence, ordered that the circuit court allow the parties to explore the issue of Massman's knowledge more fully. Hence, the issue of whether Massman's knowledge precludes it from recovering for breach of warranty *ex contractu* is now squarely before us.

■ The commission, however, confuses the issue in this case. The issue is not whether Massman knew that it placed the rock revetment in the river. Indeed, Massman does not dispute that it put the rock revetment in the river. The issue is whether Massman knew when bidding the job in 1983 that the revetment would interfere with the construction of the bridge and, therefore, knew that the commission's representation in its plan was false or incorrect. The commission incorrectly asserts, "Whether [Massman] could place the revetment squarely on the planned footprint of Pier 6 is irrelevant.... Massman's knowledge, if diluted to only knowing [it] had placed tons of ... rock in the Missouri River in the vicinity of Pier 6, would be enough to bar recovery under *Ideker* [.]" Indeed, whether Massman knew that the revetment would interfere with Pier 6 is precisely the issue. Although Massman placed the rock revetment in the river in 1979, such knowledge does not establish that Massman knew that the revetment would interfere with the bridge's construction at Pier 6.

The commission merely relies on Massman's knowledge of the rock revetment in 1979 and asserts that, because Massman had knowledge of the rock revetment when it built it in 1979, Massman is precluded from recovering for breach of warranty *ex contractu.* We disagree. Nothing in the record establishes, as a matter of law, that Massman had knowledge that the rock revetment would interfere with the bridge's construction at Pier 6. In fact, the evidence was hotly disputed about the extent of Massman's knowledge.

The evidence established that in the 10 years before the bridge project Massman had over 40 contracts with the United States Army Corps of Engineers to build more than 2000 structures in the river, including revetments. The contract for the revetment at issue in this case required Massman to build other rock structures involving multiple types of construction in 23 locations over 28 miles of the river. The evidence also established that the Corps of Engineers placed approximately 120 structures, including revetments or dikes, in the river a year and that they altered existing structures and even removed some revetments from the river.

In building revetments for the Corps, the Corps neither required contractors to keep records of the locations where they performed work on the river nor expected contractors to locate, without the Corps assistance, the proper place in the river to put the revetments. The Corps used a coordinate system and placed stakes on the riverbank to allow contractors to locate the area for placement of the revetments. The contractors then built the revetment by pushing large rocks off a barge at the location chosen by the Corps. In regard to Massman's contract with the Corps to build the revetment, Floyd Keith Jacobson, Massman's vice president of operations and a civil engineer, testified that using information supplied by the contract to locate the revetment in relation to the bridge project was not possible. At most, the evidence established that Massman knew that the revetment was near the bridge—not that Massman knew that the revetment would interfere with construction of Pier 6.

Moreover, the evidence established that, before issuing the permit to the commission for the construction of the bridge, none of the Corps' documents mentioned any conflicts between the proposed bridge and the existing revetment. Massman's witness, John Elmore, the Corps' retired chief of operations, testified that, had the Corps known of a conflict between the proposed bridge and the existing revetment, he would have expected the Corps to disclose the conflict in its engineering report made in response to the commission's request for a permit.

Although the commission offered contrary evidence,[1] the jury was free to disbelieve it. Massman presented sufficient evidence for the jury to conclude that Massman did not know that the revetment would interfere with construction of Pier 6. Given the evidence, the circuit

court did not err in denying the commission's motion for judgment notwithstanding the evidence. Although the commission established that Massman put the rock revetment in the river in 1979, reasonable minds could differ as to whether Massman knew that the revetment would interfere with construction of Pier 6 of the bridge. Viewing the evidence in the light most favorable to Massman, we conclude that Massman made a submissible case to establish a breach of warranty *ex contractu*.

We affirm the circuit court's judgment.

PATRICIA BRECKENRIDGE, Judge, and THOMAS H. NEWTON, Judge, concur.

---

1. The commission did enter into evidence a copy of the Corps' river chart. Mark Tremmell, the commission's engineer, testified that, based upon his analysis of the chart, he concluded that the chart establishes that Pier 6 of the bridge and the rock revetment would occupy the same space.