Judith HEMEYER and Michelle Hemeyer, Appellant–Respondents,

Scott Hemeyer, Plaintiff,

v.

Mick D. WILSON, as Defendant Ad Litem for Gary Benson, Jr., Defendant,

Thomas D. Cain and Sears, Roebuck and Company, Respondent–Appellants.

Nos. WD 58731, WD 58784.

Missouri Court of Appeals, Western District.

Nov. 6, 2001.

---

Lee Bushie, Rolla, MO, for appellant-respondents.

Mike Ward, St. Louis, for respondent-appellants.

Before SPINDEN, P.J.,
BRECKENRIDGE and NEWTON, JJ.

PATRICIA BRECKENRIDGE, Judge.

A jury awarded Judith Hemeyer and Michelle Hemeyer $95,500 in damages for the death of Glen Hemeyer, who was Judith's husband and Michelle's father. Mr. Hemeyer and his passenger, Gary Benson, Jr., were killed when Mr. Hemeyer's pickup truck was struck by a van driven by Thomas D. Cain in the scope and course of his employment with Sears, Roebuck and Company. The Hemeyers appeal the trial court's judgment entered in accordance with the jury's verdict, which had awarded $955,000 in total damages and assessed Mr. Hemeyer 90 percent at fault for the accident, and Mr. Cain and Sears 10 percent at fault for the accident. On appeal, the Hemeyers claim that the trial court erred in allowing a highway patrol officer to offer his opinion as to whether Mr. Cain was being honest and reliable when the officer discussed the accident with Mr. Cain, and in excluding the testimony of Mr. Benson's mother that her son, and not Mr. Hemeyer, would have been driving if Mr. Hemeyer had been drinking. Mr. Cain and Sears cross-appeal, claiming that the trial court erred in denying their motion for judgment notwithstanding the verdict because the Hemeyers did not make a submissible case that Mr. Cain failed to keep a careful lookout. This court finds that (1) the Hemeyers waived their objection to the highway patrol officer's testimony; (2) the testimony of Mr. Benson's mother was properly excluded because it was speculative; and (3) sufficient evidence supported instructing the jury on

Mr. Cain's failure to keep a careful lookout.

The judgment of the trial court is affirmed.

## I. Factual and Procedural Background

■ On review, this court views the evidence and any reasonable inferences therefrom in the light most favorable to the jury's verdict. *Massman Constr. Co. v. Mo. Highways & Transp. Comm'n,* 31 S.W.3d 109, 112 (Mo.App.2000). On the afternoon of July 11, 1997, Mr. Cain was driving a Sears repair van east on Highway 54. Mr. Cain, who performed repairs and maintenance jobs for Sears, had finished making service calls in the Lake of the Ozarks and Eldon areas and was returning to Jefferson City for another service call. Before Mr. Cain approached the Moreau River Bridge in Cole County, he moved into the left or passing lane. Mr. Cain was travelling approximately 65 miles per hour. Just before Mr. Cain entered the bridge, he looked away from the road and down at the river, where he saw someone fishing. When he resumed looking forward, Mr. Cain saw what he described as a "blue blur" in front of him. The "blue blur" was Mr. Hemeyer's pickup truck, which was also in the left lane. Mr. Hemeyer was travelling approximately 40 miles per hour. Mr. Cain's van struck the rear of Mr. Hemeyer's truck, which caused the truck to enter the median and flip over several times before coming to rest in the passing lane of westbound Highway 54. As the truck was flipping over, Mr. Hemeyer and Mr. Benson were ejected from the truck. Mr. Cain was able to regain control of the van, pull it over to the side of the road, and call the police.

Both Mr. Hemeyer and Mr. Benson died as a result of their injuries from the accident. A blood test performed on the body of Mr. Hemeyer indicated that Mr. Hemeyer had a blood-alcohol content of .329 at the time of the accident.

On April 23, 1999, Mr. Hemeyer's widow, Judith Hemeyer, and their adult children, Michelle Hemeyer and Scott Hemeyer, filed a petition for wrongful death against Mr. Cain, Sears, and Mick D. Wilson, as defendant ad litem for Mr. Benson. In the petition, the Hemeyers alleged, *inter alia,* that Mr. Cain, acting in the scope and course of his employment with Sears, negligently failed to keep a careful lookout. In their claim against Mr. Wilson, the Hemeyers alleged that Mr. Benson was driving Mr. Hemeyer's truck at the time of the accident, and was negligent in doing so.

In their answer, Mr. Cain and Sears denied all allegations of Mr. Cain's negligence, and denied that Mr. Benson was driving Mr. Hemeyer's truck at the time of the accident. Mr. Cain and Sears, however, filed a cross-claim against Mr. Wilson, as defendant ad litem for Mr. Benson, in which they pleaded, in the alternative, negligence on the part of Mr. Benson if the jury found that Mr. Benson was driving Mr. Hemeyer's truck at the time of the accident.

The Hemeyers and Mr. Cain and Sears dismissed their claims against Mr. Wilson prior to the jury trial of this case in April 2000. At the close of the evidence, Scott Hemeyer dismissed his claim against Mr. Cain and Sears. The court instructed the jury on Judith and Michelle Hemeyer's claim that Mr. Cain and Sears were negligent because Mr. Cain failed to keep a careful lookout. The court also instructed the jury that it had to assess a percentage of fault to Mr. Hemeyer if it believed that Mr. Hemeyer was driving the pickup truck at the time of the accident and negligently drove from the right lane to the left lane of the highway when it was not safe to do so, which directly contributed to cause his

death. The jury returned a verdict in favor of the Hemeyers, and found the total amount of the Hemeyers' damages, disregarding any fault on the part of Glen Hemeyer, to be $955,000. The jury determined that Mr. Cain and Sears were 10 percent at fault, and Mr. Hemeyer was 90 percent at fault. The court entered judgment on the jury's verdict, and awarded the Hemeyers $95,500 in damages, plus costs. The Hemeyers and Mr. Cain and Sears filed these appeals.

## II. The Hemeyers' Appeal

### A. The Hemeyers Waived Objection to Officer Simmons' Testimony

In their first point on appeal, the Hemeyers contend that the trial court erred in admitting a portion of the testimony of Missouri Highway Patrol Officer Scott Simmons. Officer Simmons, who arrived at the scene of the accident an hour after it had occurred and performed an accident reconstruction analysis, testified on behalf of Mr. Cain and Sears. During his direct examination, Officer Simmons testified that Mr. Cain repeatedly told him that he had just glanced away from the road for no more than one second before looking back at the road and seeing Mr. Hemeyer's truck. Officer Simmons then testified that in the five years that he has been performing accident reconstruction analyses, it is not uncommon for people involved in accidents to be "less than honest" in giving information to the investigating officers. Officer Simmons testified that as a result, it is necessary that he determine whether the people involved are actually giving him honest and reliable information. Counsel for Mr. Cain and Sears then asked Officer Simmons about whether he made such a determination regarding Mr. Cain:

Now, here's Mr. Cain, he's just been in a major accident. He knows that at least one person is dead, maybe more, and he openly tells you that before this accident happened, he took his eyes off the road. Based upon that, did you form a judgment as to whether he was being credible with you?

At that point, the Hemeyers' counsel objected on the basis that the question improperly asked Officer Simmons to state whether Mr. Cain was credible, and that was an issue "for the jury to decide." Counsel for Mr. Cain and Sears responded that the question was proper because Officer Simmons testified that "in doing his job it's necessary that he form judgments about reliability of the information and the honesty of the people that he's talking to." Counsel for both parties approached the bench, and had the following discussion with the court:

THE COURT: There are certain instances, for example, when a doctor treats someone and they give them symptoms and you have to decide whether you believe them or not in treating the person.

It seems to me that if it's connected with the issue of this individual performing his job for the Patrol and not just whether or not he believes someone, I believe that it is admissible, but I will hear your argument because I don't think he can ask him to testify whether today Mr. Cain—

[MR. CAIN AND SEARS' COUNSEL]: True.

THE COURT:—is being truthful about—

[THE HEMEYERS' COUNSEL]: I would like to ask him—have [Mr. Cain and Sears' counsel] ask the witness, Did you believe the witness at that time? You don't have to state it in terms of credibility. Let's state it in terms of,

Did you believe what he was telling you at that time.

[MR. CAIN AND SEARS' COUNSEL]: Whether Mr. Cain can be believed or not is up to the jury. I'm asking the witness whether, in the course of conducting his investigation, he made a judgment that the information he was getting from Mr. Cain was reliable and honest.

[THE HEMEYERS' COUNSEL]: If you read the question back, it was, Did you believe he was credible at that time.

THE COURT: You may use the words "reliable" and "honest" in the question.

[THE HEMEYERS' COUNSEL]: Thank you, Judge.

Counsel for Mr. Cain and Sears then asked Officer Simmons, "In interviewing Mr. Cain at the scene of the accident, did you form a judgment as to whether the information he was giving to you was reliable and honest information?" Officer Simmons answered affirmatively. When he was next asked what his judgment was, he explained:

Well, in my experience, my professional opinion is when people have been involved in an accident and they feel that they could be at blame or at fault, they will tend to lie to you.

And when Mr. Cain admitted that he turned his head away from the road, you know, that—that was really shocking to me, because most people would not have done that, because that's pretty good evidence that you may be at fault a little bit to me. But—just in itself, the sounds of turning your head away from the road may put you at fault. It doesn't all the time, but it could.

The Hemeyers contend that the trial court improperly allowed Officer Simmons, who was testifying as an expert, to offer his opinion as to Mr. Cain's credibility and reliability.

■ "A party cannot complain on appeal about an alleged error in which that party joined or acquiesced at trial." *Tate v. Dep't of Soc. Servs.*, 18 S.W.3d 3, 7 (Mo. App.2000). Here, the only question to which the Hemeyers objected was the first question counsel for Mr. Cain and Sears asked, which was whether Officer Simmons formed a judgment as to whether Mr. Cain was "being credible" with him. The sole basis for the Hemeyers' objection was the phrasing of the question, namely, that it improperly asked Officer Simmons to state whether he thought Mr. Cain was credible. Counsel for the Hemeyers then proposed that Mr. Cain and Sears' counsel phrase the question in terms of whether Officer Simmons believed Mr. Cain at the time, and not whether he thought Mr. Cain was credible. Counsel for the Hemeyers did not object when the court told Mr. Cain and Sears' counsel that he could use the words "reliable" and "honest" in his questions to Officer Simmons, and the Hemeyers did not object to the questions that were asked following the court's ruling.

■ Although the questions Mr. Cain and Sears' counsel asked Officer Simmons following the court's ruling were not identical to the question suggested by the Hemeyers' counsel, they asked for essentially the same information, which was whether Officer Simmons thought Mr. Cain's statements at the accident scene were truthful. From the conduct of the Hemeyers' counsel, the trial court could reasonably have believed that the Hemeyers acquiesced in the propriety of the rephrased question. Acquiescence in an alleged trial error constitutes a waiver of that error on appeal. *See Banks v. Village Enters., Inc.*, 32 S.W.3d 780, 797 (Mo.App.2000). The Hemeyers' first point is denied.

## B. Betty Benson's Testimony Properly Excluded as Speculative

In their second point on appeal, the Hemeyers contend that the trial court erred in sustaining Mr. Cain and Sears' objection to a portion of Betty Benson's deposition testimony that the Hemeyers offered to read to the jury. The Hemeyers attempted to introduce a portion of Ms. Benson's deposition testimony that included a question that counsel for Mr. Cain and Sears asked her. The question regarded whether Ms. Benson thought her son, Gary Benson, Jr., was driving the Hemeyer pickup truck at the time of the accident. During the deposition, counsel for the Hemeyers objected to the question on the basis that any answer Ms. Benson gave would be speculative, since she was not a witness to the actual accident. Ms. Benson then answered, "I really don't know. If Mr. Hemeyer was drinking, yes, Gary would have been driving."

At trial, Mr. Cain and Sears objected to Ms. Benson's testimony regarding whether she thought her son was driving on the bases that the testimony called for speculation and conjecture, and completely lacked foundation since Ms. Benson testified that she did not know who was driving. In response, counsel for the Hemeyers argued that the question to Ms. Benson eliciting her speculative testimony was posed by counsel for Mr. Cain and Sears, and although the Hemeyers objected to the question on behalf of the Hemeyers at the time the question was asked, he was withdrawing the Hemeyers' objection. Counsel for the Hemeyers contended that counsel for Mr. Cain and Sears could not now object to his own question "just because he didn't like the answer." In sustaining Mr. Cain and Sears' objection and excluding that portion of Ms. Benson's deposition testimony, the court stated that "[i]n a discovery de-

position, one can ask all kind of things that would not later become admissible if it may lead to admissible evidence. Now, whether or not they can then present it at trial would be a different matter."

The trial court has broad discretion in determining whether to admit deposition testimony. *Nugent v. Owens–Corning Fiberglas, Inc.,* 925 S.W.2d 925, 929 (Mo.App.1996). This court will not disturb the court's decision to exclude deposition testimony absent an abuse of that discretion. *Koontz v. Ferber,* 870 S.W.2d 885, 890 (Mo.App.1993). Moreover, in reviewing the exclusion of evidence in general, this court is not bound "by the rationale for the objection made or the reasons expressed by the trial court for excluding the evidence." *Aliff v. Cody,* 26 S.W.3d 309, 314–15 (Mo.App.2000). " 'The trial court's ruling is upheld when there exists any recognizable ground on which the trial judge could have rejected the evidence.' " *Id.* at 315 (quoting *State ex rel. Mo. Highway & Transp. Comm'n v. Buys,* 909 S.W.2d 735, 738 (Mo.App.1995)).

Here, the Hemeyers argue that the court abused its discretion in excluding the portion of Ms. Benson's testimony because Mr. Cain and Sears asked the objectionable question during the deposition and then waived any speculation objection by not timely making such an objection during the deposition. Rule 57.07 governs the use of depositions in court proceedings. *Frey v. Barnes Hosp.,* 706 S.W.2d 51, 54 (Mo.App.1986). Rule 57.07(c)(4) specifically addresses when certain objections to deposed testimony are waived if not made before or during the deposition:

An objection to the competency, relevancy, or materiality of testimony is not waived by failure to object before or during the deposition. Errors and irregularities in the manner of taking the deposition, in the form of the questions

or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind that might be cured if promptly presented are waived unless seasonable objection thereto is made during the deposition.

The Hemeyers contend that Mr. Cain and Sears' speculation objection went to the form of the question and Ms. Benson's answer. The Hemeyers rely upon *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, (Mo. banc 1991). In *Seabaugh*, the Supreme Court explained the purpose for requiring objections to the form of questions and answers in depositions, stating that "[t]he rule serves to give questioning counsel an opportunity to rephrase the question, lay a better foundation, or clarify the question so that evidence will not be rejected at trial because of inadvertent omissions or careless questions." *Id.* at 210. The Court in *Seabaugh* held that the defendant in a personal injury case, by failing to object during the deposition, waived a speculation objection to a physician's deposition testimony that it was "more likely" or "more probable," as opposed to within a reasonable degree of medical certainty, that plaintiff's injuries would worsen over time. *Id.* at 209–10. The Court explained that had the objection been made during the deposition, the plaintiff's counsel would have had the opportunity to rephrase the question to remove the question and answer from the realm of speculation. *Id.* at 210.

▮ In this case, the speculative nature of Ms. Benson's testimony regarding whether she thought her son was driving at the time of the accident could not have been cured by rephrasing the question, laying a better foundation, or clarifying the question. Ms. Benson specifically prefaced her answer to the question of whether she thought her son was driving Mr. Hemeyer's pickup truck at the time of the

accident with the statement, "I really don't know." Her testimony after that statement, that if Mr. Hemeyer was drinking, her son would have been driving, was inherently speculative and conjectural. It was not the form of her answer, but its content, that was objectionable. "The general rule is that '[t]he testimony of a witness must be based upon [personal] knowledge.'" *Francis v. Richardson,* 978 S.W.2d 70, 73 (Mo.App.1998) (quoting *Cummings v. Tepsco Tenn. Pipe & Supply Corp.,* 632 S.W.2d 498, 500 (Mo.App.1982)). "If the testimony of a witness, read as a whole, conclusively demonstrates that whatever he may have said with respect to the issue under investigation was a mere guess on his part and that, in fact, he did not know about that concerning which he undertook to speak, his testimony on the issue cannot be regarded as having any probative value." *Cummings,* 632 S.W.2d at 500. There was no question that could have been asked that would have made Ms. Benson's belief as to whether her son was driving at the time of the accident anything more than a guess. Such a defect in her testimony could not have been "cured at the deposition by prompt presentation." *See Hackman v. Kindrick,* 882 S.W.2d 157, 159 (Mo.App.1994). Therefore, Mr. Cain and Sears did not waive a speculation objection to this portion of Ms. Benson's deposition testimony, and the trial court did not abuse its discretion in excluding it at trial. The Hemeyers' second point is denied.

## III.  Mr. Cain and Sears' Cross–Appeal

### The Hemeyers Made a Submissible Case for Failure to Keep a Careful Lookout

▮ In their sole point, Mr. Cain and Sears contend that the trial court erred in denying their motion for a judgment notwithstanding the verdict because

the evidence was insufficient to support the submission of the Hemeyers' claim that Mr. Cain failed to keep a careful lookout. Review of the denial of a motion for judgment notwithstanding the verdict consists of determining whether the non-movant made a submissible case. *Massman*, 31 S.W.3d at 112. In making such a determination, this court views the evidence and any reasonable inferences therefrom in the light most favorable to the jury's verdict, and disregards contrary evidence. *Id.* This court will not find the evidence insufficient to support the jury's verdict unless " 'there is a "complete absence of probative fact" to support the jury's conclusion.' " *Id.* (quoting *Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998) (citation omitted)). "When reasonable minds can differ on a question put to a jury, the court may not disturb the jury's verdict." *Id.*

To make a submissible case for failure to keep a careful lookout, the plaintiff must show that the defendant, "in the exercise of the highest degree of care," could have seen the plaintiff's vehicle in time "to have taken 'effective precautionary action.' " *Charles v. Ryan*, 618 S.W.2d 220, 222 (Mo.App.1981) (citation omitted). "Proof of failure to keep a careful lookout, standing alone, is not enough." *Williams v. Christian*, 520 S.W.2d 139, 143 (Mo.App. 1974). The plaintiff must also establish that the defendant had the means and ability to have avoided the collision with the plaintiff's vehicle. *Charles*, 618 S.W.2d at 222. In *Zalle v. Underwood*, 372 S.W.2d 98, 102 (Mo.1963), the Supreme Court described what constitutes the "means and ability" to avoid a collision:

> Having the means and ability to avoid a collision means not only the mechanical appliances, such as steering apparatus with which to swerve, signalling [sic] equipment with which to warn, or brak-ing appliances with which to slow down or stop, but also the existence of sufficient time and distance, considering the movements and speeds of the vehicles, to enable the party charged to take effective action in avoidance.

Evidence of the means and ability to avoid the collision is necessary to establish that the defendant's "failure to keep a careful lookout constituted the proximate cause of the complained of accident." *Williams*, 520 S.W.2d at 143.

In this case, the evidence favorable to the submission of the Hemeyers' claim established that on the afternoon of the accident, the weather was clear and there was no rain. Mr. Cain was eastbound on Highway 54, and was approaching the Moreau River Bridge, which was approximately 435 feet long. The traffic that day was light, and there were no obstructions, hills, or curves blocking Mr. Cain's view of the highway in front of him for at least one-half of a mile before the bridge. Before Mr. Cain came upon the bridge, he moved into the left or passing lane.

According to a statement Mr. Cain gave to Bruce Reinkemeyer, the lead investigator of the accident for the Missouri Highway Patrol, "just before" Mr. Cain entered the bridge, he "glanced at the water and saw a fisherman down there." At that point, his van was 390.5 feet from the point of impact with Mr. Hemeyer's truck. Mr. Cain estimated his speed at that time was 65 miles per hour.

James Hall, an accident reconstruction expert who testified on behalf of Mr. Cain and Sears, calculated that at that rate of speed, Mr. Cain's van reached the point of impact approximately four seconds after Mr. Cain looked down at the river. Mr. Cain testified that, before he looked away from the road, he did not see Mr. Hemeyer's truck, or any other vehicle in the left

lane, but when he resumed looking at the road, he saw Mr. Hemeyer's truck in front of him. Officer Reinkemeyer testified that he believed that "a fair conclusion" from Mr. Cain's statement and the physical evidence at the scene of the accident is that Mr. Cain looked away from the road from the time he entered the bridge until the point of impact. Therefore, despite Mr. Cain's contention that he looked away from the road for a "split second," the evidence, in the light most favorable to the jury's verdict, indicates that Mr. Cain looked away from the road for approximately four seconds.

As for the location of Mr. Hemeyer's truck during those four seconds that Mr. Cain was looking away from the road, Mr. Hall testified that four seconds before Mr. Cain hit Mr. Hemeyer's truck, Mr. Hemeyer's truck was 240.4 feet from the point of impact. This calculation is based upon the opinion of Stan Oglesby, an accident reconstruction expert retained by the Hemeyers, that the rate of speed of Mr. Hemeyer's truck was 40 miles per hour. The difference between where Mr. Cain's van was four seconds before the point of impact, which was 390.5 feet, and where Mr. Hemeyer's truck was four seconds before the point of impact, which was 240.4 feet, is 150 feet. Thus, the evidence establishes that at the point at which Mr. Cain began looking away from the road for four seconds, Mr. Hemeyer's truck was 150 feet in front of him.

Mr. Cain and Sears contend that there is no evidence that Mr. Hemeyer's truck was in the left lane for an amount of time sufficient to have allowed Mr. Cain to avoid the accident. In making this argument, Mr. Cain and Sears ignore this court's standard of review. While Mr. Cain and Sears presented evidence that the damage to the vehicles indicated that the impact was at an angle, and was caused by Mr. Hemeyer's suddenly swerving his truck from the right to the left lane, the evidence in the light most favorable to the submission of the instruction indicates otherwise. Mr. Oglesby opined that the damage to the vehicles established that the impact was straight on or in a line, and that Mr. Hemeyer's truck was directly in front of Mr. Cain's van when Mr. Cain hit it. According to Mr. Oglesby, for Mr. Hemeyer's vehicle to move from the right lane and get situated in the left lane would take two to three seconds. Mr. Oglesby believed that Mr. Hemeyer's truck had been in its position at impact "for some time prior" to being hit by Mr. Cain's van. A reasonable inference from this evidence is that Mr. Hemeyer began to move his truck into the left lane at the beginning of the four seconds that Mr. Cain was looking away from the road.

Mr. Cain and Sears are correct that there is no direct testimony from either expert that, if Mr. Cain had been looking forward, he would have been able to avoid hitting Mr. Hemeyer's truck when it changed lanes. Mr. Hall testified, however, that if Mr. Hemeyer suddenly moved to the left lane when his truck was 150 feet in front of Mr. Cain's van, which would have been at the beginning of those four seconds, it is "very probable" that Mr. Cain could have avoided hitting Mr. Hemeyer if Mr. Cain had been looking forward. From this testimony the jury could have also found that, if Mr. Cain had been looking forward, he could have avoided hitting Mr. Hemeyer if Mr. Hemeyer began a less sudden change of lanes at the beginning of the four seconds. Even Officer Reinkemeyer, who was called to testify on behalf of Mr. Cain and Sears, agreed that Mr. Cain's travelling at approximately 65 miles per hour and looking away from the road for several seconds could have contributed to the accident.

Viewing the evidence in the light most favorable to the jury's verdict, and disregarding Mr. Cain and Sears' contrary evidence, this court finds that the Hemeyers made a submissible case that Mr. Cain had the means and ability to have avoided the accident, and thus failed to keep a careful lookout. Therefore, the trial court did not err in denying Mr. Cain and Sears' motion for a judgment notwithstanding the verdict. Mr. Cain and Sears' point in their cross-appeal is denied.

The judgment of the trial court is affirmed.

All concur.